## Charles O. Hamlin v. Richard Mack.

*Distress damage feasant: Common-law remedy.* The right of distress damage feasant existed at common law and is not a creature of the statute, though legislation has been adopted to regulate its exercise; so that it is inaccurate to speak of this remedy as something merely statutory and in derogation of the common-law rights of property.

*Distrained animals: Rescue: Regularity of the distress: Replevin.* One sued under the statute (*Comp. L.*, § *6782*) for a rescue of beasts distrained or impounded cannot bring into question the regularity of the distrainor's proceedings; he is expressly remitted to his action of replevin to test the validity of those proceedings.

*Distress damage feasant.* The taking of another's beast when trespassing on the taker's land, and confining it in his barn, is sufficient to constitute a lawful distress damage feasant.

*Distrained animals: Rescue: Violence: Unlawful taking.* The taking away and setting at liberty against law a distrained animal constitutes a rescue, and it is not necessary that positive violence, or menacing or threatening words should be employed to characterize the act as a rescue; and such a taking is esteemed in law a violent taking.

*Heard October 29. Decided November 3.*

Error to Allegan Circuit.

*Pope & Stuck*, for plaintiff in error.

*W. A. Woodworth, Fenn & Hart* and *F. J. Littlejohn*, for defendant in error.

GRAVES, CH. J:

Hamlin sued Mack and based his action on § *6782 C. L.*, which reads as follows: "If any person shall rescue any beasts distrained or impounded for any cause, he shall

be liable to an action on the case, to be brought by any person injured, to pay all damages which such person shall have sustained thereby, and all the fees and charges which shall have been incurred before the rescue, and shall also forfeit a sum not less than five nor more than twenty dollars."

The declaration alleged that he, Hamlin, seized a heifer doing damage in his field, that there was no township pound and he impounded her in his barn, and there fed and took care of her from November 10th, 1873, to the 5th of the following February, and that Mack rescued her. The declaration then set up a claim for various items of damages. The cause being on trial before a jury, a discussion arose as to the range and admission of proof, when the judge intimated a decided opinion that the plaintiff would not be entitled to recover unless he showed a regular impounding under the statute and an adherence to the directions of the statute in regard to the subsequent steps.

The plaintiff's counsel thereupon proposed to shorten the trial by stating in the form of an offer of proof the precise facts he expected to show to secure a recovery, and this course being assented to by counsel for defendant, the plaintiff's counsel made offer to show that on *November 10th, 1873, the plaintiff found the heifer doing damage on his premises, that there was no township pound, that he took her and confined her in his barn and supplied her with proper food and water until February 5th, thereafter;* that within twenty-four hours he gave verbal notice to one who had owned her, and requested him to pay damages and take her away; that this person disclaimed ownership, and said he had sold the heifer before that to another person named; that in the same week and five or six days after, he, the plaintiff, called on the person who was said to have purchased, and gave him verbal notice, and desired him to pay charges and take the heifer away; that this person also disclaimed ownership; that on the 26th of the same November plaintiff filed with the township clerk a notice, describing the heifer, stating that he had taken her up at his farm, on or about the 20th,

and that the owner was requested to prove property, pay charges and take the beast away; that a copy was forwarded by the township clerk to the county clerk; that on the 10th of December following he published a like notice in a county newspaper; that on the 5th of February following, the defendant took the heifer from the plaintiff's possession without his consent.

On objection by defendant's counsel the court rejected the offer and directed the jury to find for defendant, which was done accordingly.

The plaintiff's counsel contends that in case of lawful distress and impounding, and non-observance thereafter (which was the case here), of the steps marked out by statute to be taken by the distrainor, the owner is expressly restricted to replevin under *ch. 214, C. L.*, if he would take advantage of such illegalities; and that if instead of resorting to replevin to regain his property, he rescues it out of the distrainor's possession, and the latter thereupon sues in case upon this statute (§ *6782 C. L.*), the rescuer is precluded from setting up such subsequent illegalities, and they constitute no defense whatever. And he further insists that the offer in question embraced a state of facts showing a lawful distress and impounding by him and an illegal rescue by the defendant, and that the ruling of the court was therefore wrong. If these positions are correct, the conclusion that the court erred is of course also correct. The learned counsel for defendant contends that the remedy sought by the plaintiff is purely statutory and derogatory to the common-law rights of property owners and should be construed strictly, and that in compliance with all material provisions of the statute ought to be insisted on; that under *ch. 214 C. L.*, the party trespassed upon by cattle has an election of remedies, and may sue in trespass, or distrain and impound, and that in case he distrains and impounds, the distress can only be rendered lawful by strict compliance with the statutory requirements. And that a rescue involves a *forcible* taking back of the beast when lawfully impounded,

and requires something more than a mere taking without leave; that there must be violent acts or menacing or threatening words.

The right of distress damage feasant existed at common law and was not introduced by statute.—*1st Inst., 142 a, 161 a.*

It sprang from a felt necessity for a summary and direct remedy against the beasts committing damage, and also for some guard against possible incentives to do hurt to them or put them out of the way. The owner might not be discoverable, or be in a situation to be reached by process, or if discovered and within the reach of process, there might be impediments to any redress by an ordinary action. And if the beasts could not be held, the injured party might be moved to misuse them or put them in a way to be lost to the owner. The right itself, with several incidents, being established at common law, acts were passed in England to regulate its exercise, and the same course has been taken here.

It is scarcely correct, therefore, to speak of the remedy by distress damage feasant as something merely statutory and in derogation of the common-law rights of property.

The right being admitted, it was needful to frame guards, not only against wrongs likely to be done under color of it, but also against violations likely to be committed against the right itself, under color of the very guards intended merely to prevent its being resorted to as a cloak for wrong.

As a safeguard in certain cases against the carrying on of proceedings in the assumed exercise or furtherance of the right of distress, the law admitted the right of rescue, but as this latter right was subject to be perverted and made an instrument to thwart the right of distress in cases when it was considered it ought not to be interfered with, and also subject to be resorted to in such manner and on such occasions as to give rise to unseemly wrangles and collisions, it was at length settled that generally, in case of an asserted distress, the regularity of the proceedings should not be left

to the judgment or caprice of the party, but should be triable exclusively in a court of law, and in a specific proceeding, to be instituted by the party claiming the distrained beasts.

Our law now in question is framed on this principle.

This appears pretty plainly on reading the section first quoted, and on which the present declaration is based, and the section which immediately succeeds. The latter section, being § *6783*, is as follows:

"The defendant in any action brought for rescuing beasts distrained or impounded, shall not be allowed to allege or give in evidence the insufficiency of the fences, or any other fact or circumstance to show that the distress or impounding was illegal; but if there is any ground of objection to the proceeding, of which he is entitled to avail himself, he may have the advantage thereof in an action of replevin, to be brought as provided in the following sections."

In view of these provisions it cannot be maintained that one sued on *section 6782* can bring into question the regularity of the distrainor's proceedings. That is forbidden. He may of course controvert the allegation of rescue and every fact bound up with it.

He is expressly remitted to his action of replevin to test the validity of the course of the distrainor, and he cannot regain his property by rescue, and when sued therefor on the statute, proceed to defend on the ground that the distrainor did not follow out the statute.

The offer of the plaintiff embraced facts to show a lawful distress damage feasant. There was no township pound, and the plaintiff personally took the beast when trespassing on his land, and confined it in his barn there. Before this act the beast in contemplation of law was in the owner's possession, but the seizure of it damage feasant, and immediate confinement of it by the plaintiff in his barn there, took it out of the owner's possession and into the plaintiff's

HAMLIN *v.* MACK.

custody, and this was enough to constitute a distress damage feasant.—*3 B. C. 6; Broom and Had. Com., B. 2, p. 74.*

The offer made included sufficient matter to prove a rescue. It was not necessary that positive violence, or menacing, or threatening words should be employed to characterize the act as a rescue of the beast. The taking away and setting at liberty against law the distrained animal, constitutes a rescue.—*1 Inst., 160 b; Bac. Ab., "Rescue" a; 1 Whea. Sel., 689.* Such a taking is esteemed in law a violent taking.

The facts offered showed a lawful distress and impounding, and the taking away and setting at liberty by the defendant, without the consent of the plaintiff, was a taking away and setting at liberty against law. The proposed facts, then, if admitted, would have shown, in the absence of any countervailing circumstance, a rescue by the defendant. And the statute forbade any showing by the latter of irregularities alleged by the defendant in the course taken by the plaintiff.

The plaintiff was therefore warranted in his offer, and the court erred in rejecting it. No question has been made as to what were proper items of damage, and we are not to be understood as saying that those claimed for irregular proceedings, or for the keep of the animal in the course of such proceedings, would be recoverable.

The judgment should be reversed, with costs, and a new trial ordered.

The other Justices concurred.