## JOSIE GILBERT v. JOHN R. STEPHENS.

(Filed February 18, 1898.)

1. HERD LAW—*Animals Running at Large.* Within the meaning of the provisions of art. 2, ch. 2, Ok. Stat. 1893, animals trespassing upon the premises of another than their owner and not under the immediate control of their owner, "are running at large.'

2. ACTION OF REPLEVIN BEFORE JUSTICE—*When Commenced.* The record discloses that plaintiff filed her petition, affidavit and undertaking in replevin with the justice on the evening of November 21, 1894, and that said justice immediately issued a summons and an order of replevin, separately, and delivered same to a constable who, on the morning of November 22, seized the horses in controversy and delivered them to plaintiff; that on November 26, upon motion of defendant, the summons and order of replevin were quashed and an *alias* summons in proper form issued, plaintiff retaining possession of the property at all times since the morning of November 22; *held* that the action should be deemed to have been commenced on the evening of November 21, when the first summons and order of replevin, though defective, were issued and delivered to the officer.

3. DAMAGES BY TRESPASSING ANIMALS—*Amount of Testimony Thereon— Tender and Demand.* Where the testimony on behalf of plaintiff tends to show that the amount of damages, (including reasonable compensation for taking up and keeping) caused by trespassing animals owned by her, was determined by two arbitrators, one selected by plaintiff and one by defendant, and the evidence clearly shows that plaintiff tendered to defendant a certain amount to cover such damages, and tends to show that the amount tendered equalled the amount fixed by said arbitrators, and it is admitted that defendant was holding possession of the stock under authority of the provisions of said art. 2, ch. 2, Stat. 1893; it was error for the trial court to exclude a portion of the testimony offered by plaintiff to establish the actual amount of such damages, and for said court, after having been requested in seasonable time by counsel for plaintiff to make special findings of fact separately from the conclusions of law, to fail and refuse to find the amount of damages, (including such reasonable compensation,) so sustained by defendant.

(Syllabus by the Court.)

—43

*Error from the District Court of Canadian County; before Jno. H. Burford, District Judge.*

*Blake & Blake,* for plaintiff in error.

*Gillette & Libby,* for defendant in error.

This is an action of replevin to recover the possession of two head of horses, originally brought by plaintiff in error against defendant in error before a justice of the peace, subsequently appealed to the district court, where trial was had to the court without a jury, which resulted in judgment for defendant. Plaintiff brings error. Reversed.

Upon the request of plaintiff's counsel, the district court made the following findings of fact and conclusions of law, to-wit:

"The court finds that on the 20th day of November, 1894, plaintiff was the owner of two horses described in the petition, and that they were placed in a corral on her farm on the night of the 20th of November, 1894, and during the night escaped and went upon the premises of the defendant, and on the morning of the 21st defendant found the two horses within his enclosure near his house and barn; that he took up the horses and placed them in his barn or corral, and the same day notified the plaintiff that he had possession of them; that plaintiff went to defendant's house in the forenoon of the 21st, and asked the defendant if he had her horses, to which he answered that he had, and she then asked him what the damages was, to which he answered that the damages was not much, but he wanted three dollars for taking up the stock.

"The plaintiff then proposed to leave it to a couple of neighbors to be selected by them, to arbitrate the amount of the damage, to which the defendant refused; after-

wards and on the same day, and before noon, defendant went to plaintiff's house and stated that he would agree to an arbitration by two persons to be seclected by them; that they selected the two persons to agree upon the amount that she should pay before the horses should be delivered. Shortly before noon the plaintiff and defendant, and the two persons selected went to his home, and an attempt was made to agree upon the amount of damage, but no agreement was reached, and the defendant finally agreed to accept two dollars and thirty-five cents and release the horses, and the plaintiff offered to pay one dollar and thirty-five cents for the release, which the defendant refused. The plaintiff left the horses in the possession of the defendant, and after demand for them, and refusal on his part, the defendant the next day, and within twenty-four hours from the time of the demand and refusal, went before B. F. Fisher, justice of the peace of El Reno City township, in Canadian county, O. T., and served a written notice upon the justice to appear at his premises, which notice was served by the defendant on the justice of the peace at 11 o'clock on the 22nd day of November, and the justice served notice upon the plaintiff that he would appear upon the premises of the defendant at the time fixed in the notice to assess the damages, which notice was in conformity with the statutes; that before the time for assessing the damages by the justice of the peace, under the notice, the plaintiff brought this action in replevin for the property; that summons and writ of replevin were issued on the 21st day of November, and the return of the officer showed that he received the writ at 6 o'clock P. M. on the 21st day of November, 1894.

"The court further finds that the horses were of that class of animals which are, under the statutes, prohibited from running at large, and that there has been no action by the people or board of county commissioners of Canadian county, or voters of the district where the plaintiff and defendant reside, permitting stock of that class to

run at large at any time, and that the defendant had the right to the possession of the horses at the time the suit was brought, and that the plaintiff has failed to show by a preponderance of the evidence that she was entitled to the possession of the stock at the time the suit was brought, and under the law the defendant is entitled to recover a judgment for his costs."

The foregoing findings of fact and conclusions of law were never signed by the judge, and immediately upon the announcement of said findings and conclusions by the court, plaintiff's counsel, in open court, took the following exceptions thereto:

"The plaintiff at the time they were announced by the court, excepted to the findings and conclusions, for the reason that they were contrary to the evidence, indefinite, not supported by the evidence and not sufficiently specific as to the times of the various transactions, character of the corral, the amount of the damages, and the transactions between the parties with reference to arbitrations and agreements had, and as failing to find upon the question of damages, and also excepted to the conclusions of law, for the reason that they were not in accordance with the findings and the testimony in the case."

The other material facts are stated in the opinion.

Opinion of the court by

KEATON, J.: Plaintiff in error's first contention is that the animals described in the pleadings were not running at large, within the meaning of the provisions of art. 2, ch. 2, Oklahoma Statutes, 1893, in as much as they accidentally, and without her knowledge or consent, escaped from the enclosure into which she had turned them on the evening of the day before they were distrained by defendant as *damage feasant*, and the following authorities are cited in support of this contention: *Stephenson*

*v. Ferguson,* 30 N. E. 714; *McBride v. Hicklin,* 24 N. E.
755; *Rutter v. Henry,* 20 N. E. 334; *Anderson v. Worley,*
3 N. E. 817; *Jones v. Clauser,* 16 N. E. 797.

In the first place, the finding of the trial court, if such
finding was, in fact, made, that said animals escaped
from plaintiff's enclosure, is entirely without support in
the evidence, for the reason that said court, upon the ob-
jection of defendant, excluded all testimony offered touch-
ing upon this question. However, if the contention of
counsel for plaintiff in error upon this proposition is cor-
rect, it is evident that the court below committed preju-
dicial error in excluding the testimony offered by plaintiff
at the trial of the case tending to show that the animals
had so escaped from the enclosure and were accidentally
at large; but, after a careful consideration of the argu-
ments made and authorities cited upon this proposition,
together with the provisions of our statute relative there-
to, we are of the opinion that the contention of plaintiff
in error is not maintainable.

The provisions of our statute which we regard as
especially applicable to and decisive of this question, are
the following:

"Every owner of swine, sheep, goats, stallions and
jacks, shall restrain them from running at large at all
seasons of the year. All other stock shall be so re-
strained unless permitted to run at large as hereinafter
provided in this act. (Okla. Stat., 1893, gen. sec. 178.)

"The owner of any stock or domestic animal prohibited
by law from running at large, * * shall be liable for
all damages done thereby while wrongfully remaining at
large upon the public highway, or upon the lands of
another; which may be recovered by action of law, or the
party injured may, at his option, distrain the trespassing
animals and retain the same in some safe place

at the expense of the owner until damages are paid, as provided in this act. * * *Provided, however,* that no stock or domestic animal prohibited from running at large by virtue of such police regulation shall be considered as running at large so long as the same is upon the unimproved and uncultivated lands of the owner of said stock, and under the immediate care and control of the owner, or upon the public highway; but if permitted while under such care and control to stray upon the lands of another, they shall be held to be at large." (*id.* sec. 182.)

"Any person a resident of the county may take up any jack, boar, buck or male goat found at large in the county, and when so taken up the animal shall be treated in all respects as in this act provided in regard to stock trespassing." (*id.* sec. 187.)

"Persons injured by animals trespassing upon their lands may pursue the remedies provided in this act, or may maintain civil actions before any court of competent jurisdiction to recover the amount of damages so claimed. The persons or owners of stock prohibited from running at large by this act, shall be liable for all damages done by such animals upon the land of another, and the owner of the land so trespassed upon may restrain such stock as in this act provided, or may recover damages by civil action." (*id.* sec. 188.)

It seems to us that the foregoing provisions of our statute are too plain to need interpretation in order to show that animals, which are prohibited by law from running at large, trespassing upon the premises of another than their owner, are to be considered as running at large within the meaning of said provisions. In other words, trespassing animals are, within the meaning of said statutory provisions, animals running at large, in so far, at least, as to authorize any person, who has sustained damage by reason of the trespass, to restrain said animals and to pursue the remedies provided in said art. 2, for the

collection of the damages sustained and the reasonable costs of seizing and keeping the animals, regardless of the manner in which they may have left the premises of their owner. This was the rule of the common law, and our statute is but declaratory of that rule, with some specific additions and modifications.

"A person finding the animals of another trespassing on his grounds *damage feasant* may by the rules of the common law, distrain them until satisfaction for the damage done shall be made by the owner of the animals." (2 Am. & Eng. Enc. Law, 2nd Ed. 358, and cases cited under note 3, especially; *Hamlin v. Mack*, 33 Mich. 103; *Rockwell v. Nearing*, 35 N. Y. 302; and *Cook v. Gregg, id.* 439.)

The meaning of the words "running at large" is different in different statutes, and should always be determined largely from the objects and purposes sought to be accomplished by the particular statute wherein they are used. In Iowa, under a statute declaring railroad corporations absolutely liable in damages for the killing of stock running at large, where such corporations have failed to fence their rights of way, it is held: "The words 'running at large,' as used in the statute, implies that the stock they are used to describe is not under the control of the owner." (*Hammond v. C. & N. W. Ry. Co.* 43 Io. 168; *Hinman v. The Chicago, R. I. & P. Ry. Co.*, 28 *id.* 491.)

Counsel for plaintiff in error also contend that the defendant did not give the required notice to the justice of the peace within the time required by statute, claiming that said notice to the justice is required to be given within twenty-four hours after the notice is given to the owner of the stock. In this case notice was given to the owner some time between sun-up and 9 o'clock of November 21,

1894, and notice was given to the justice at 11 o'clock of November 22, 1894. That portion of sec. 185, Statutes 1893, requiring this notice, reads as follows:

"Within twenty-four hours after the stock has been re-strained, Sunday not being included, the party so injured, or his agent, shall notify the owner of said stock, when known, and if unknown, the party having them in charge, and if said owner shall fail to satisfy the person whose lands are trespassed upon, he shall, within twenty-four hours thereafter, notify some disinterested justice of the peace to be and appear upon the premises to view and assess the damages; such notice to be written."

Counsel for defendant in error insist that: "The stat-ute provides that the notice to the justice of the peace shall be given within twenty-four hours after the failure of the owner of the stock to satisfy the person whose land has been trespassed upon;" and in the case at bar the evidence shows that it was late in the afternoon of November 21 before it was finally determined that a set-tlement could not be had between plaintiff and defendant, of the damages alleged to have been committed by the stock and the necessary expense of taking up and de-taining them. The statute is, unquestionably, very in-definite as to the point from which the last twenty-four hours mentioned shall begin to run; but in this case it is not necessary to pass upon the question here presented for the reason, (as will hereinafter more fully appear,) that this action was commenced on the evening of said November 21 which was long before the expiration of twenty-four hours from the time notice was given to said owner, and defendant was not required to take any further proceedings for the preservation of his lien after

the commencement of the action, as the cause must be determined in accordance with the possessory rights of the parties in controversy at that time.

The justice of the peace so notified, after having had the required written notice served upon plaintiff, appeared upon the premises of the defendant on November 23, and assessed the amount of defendant's damages together with the amount allowed him for expense in seizing and keeping the stock, but this assessment was not filed with the county clerk for nine days thereafter, and no further proceedings were taken to perfect defendant's inceptive lien upon the stock and to subject the same to sale for the payment of such damages, expenses and costs. While plaintiff filed her bill of particulars, affidavit in replevin and replevin bond in proper form with the justice before whom this action was originally commenced, on the evening of the 21st day of November, 1894, and the justice issued an ordinary summons and order of replevin and delivered same to the constable for service on the same date, and they were served on the morning of November 22, and the horses in controversy taken by the officer serving same and the possession thereof delivered to plaintiff; still, counsel for plaintiff insist that this action was not commenced until November 26, for the reason that the first summons and order of replevin were quashed, upon motion of defendant, and another one in proper form issued on said last mentioned date; and also that, as none of the necessary proceedings, for defendant to retain legal possession of the stock subsequent to the assessment of damages, was taken, plaintiff was therefore entitled to the possession on the said 26th day of November, when the action was commenced. We think that

there is no merit in the contention that this action was not commenced until November 26, 1894, and even if it were conceded to be correct, then it is clear plaintiff must fail therein for the reason that she had possession of the property in controversy at the time of the commencement thereof.

In *Wheeler & Wilson Mnfg. Co. v. Teetzlaff*, (Wis.) 10 N. W. 155, it was held:

"In replevin for a sewing machine it appeared that, at the time of filing his affidavit for a warrant, plaintiff was in possession of the 'head' of the machine, *i. e.*, of the whole machine except the stand upon which the apparatus for sewing was placed; though he returned the 'head' to defendant's possession before the warrant was served. *Held*, that the action would not lie."

In *Kiefer v. Carrier*, (Wis.) *id.* 562, it is held:

"Replevin commenced in the circuit court will not lie where the property was restored to plaintiff before the summons was served."

However, we are clearly of the opinion that the action at bar should be deemed to have been commenced when the first summons and order of replevin were issued.

"Actions before justices of the peace are commenced by summons, or by appearance and agreement of the parties without the summons. In the former, the action is deemed commenced by delivery of the writ to the constable to be served, and he shall note thereon the time of receiving the same." (Okla. Stat., 1893, sec. 4647.)

The rule is well settled that if defendant had the legal right to the possession of the stock at the time this action was commenced, then the plaintiff cannot recover. (*Kay v. Noll*, [Neb.] 30 N. W. 269; *Kingsbury v. Buchanan*, 11 Io. 387; *Duncan v. Brennan*, 83 N. Y. 487; Cobbey on Replevin, sec. 96; *Morton v. Rochey*, [Mich.] 9 N. W. 492.)

In the case last cited, it is said: "The circuit judge struck out all of the evidence relating to the impounding. The reasons for this ruling are not stated in the record, though it is inferable that it was because the statutory notice was not given. It may be that he was of the opinion that subsequent acts of neglect of Norton had rendered him a trespasser *ab initio*, and deprived him of the protection to which he was entitled at first; but to make such acts important it must appear that they were done before suit was instituted."

Counsel for plaintiff in error also earnestly contend that the trial court erred in making no finding as to the amount of damages, (including a reasonable sum for taking up and keeping,) sustained by the defendant by reason of the trespass committed by the stock in controversy. We think this contention well founded.

As already seen, our statute provides that it is only in the event "said owner shall fail to satisfy the person whose lands are trespassed upon" that the party taking up stock has the right to continue to detain it and to pursue further the remedies provided in said art. 2, ch. 2, for the perfection of his lien thereon.

In the case at bar the testimony on behalf of plaintiff tends very strongly to prove that both plaintiff and defendant, by agreement, submitted the matter of the amount of damages, (including a reasonable sum for the taking up and keeping of the animals,) to two arbitrators, and that these arbitrators agreed that the amount of damages actually committed by the two horses in controversy on defendant's premises was thirty-five cents, and that one dollar would be reasonable compensation to him for taking them up and detaining them the short

period of time which elapsed prior to the arbitration; that plaintiff, on the same day and prior to the bringing of this action, tendered to the defendant said sum of $1.35; that defendant first agreed to accept same, but afterwards, and at the time the tender of the exact amount was actually made to him, refused to accept it. In fact, defendant himself testifies that the matter of the actual damages committed by the horses was submitted to the two arbitrators and that they fixed the amount at thirty-five cents, and that he agreed to accept this amount in full for the damages done, but insisted upon being paid two dollars instead of one for taking up and keeping the stock. He says: "She would not agree to give me anything for taking up and keeping of the stock. Her man spoke up and said he would offer fifty cents if that would settle it. We had agreed upon the corn as being worth only thirty-five cents and I said I would accept it if it was only five cents; they put it at thirty-five cents and I told them I would accept that as a settlement. * * Mr. Russell * * says I will g've you fifty cents apiece for taking them up and I says the taking up is a dollar apiece. I says, the damages are all right so far." He further testifies, in part as follows:

"Q. Was there any arbitration between these two parties as to what you should have for taking up and keeping the stock? A. No, sir.

"Q. What talk or conversation was had with reference to the difficulty you had experienced in catching these horses? A. I told her that one of them was very easily caught, and the other one my hired man could not get. It circled around through the field a good while and asked to help me catch it, and while he was at the house I tied the one up and he came into the barn. * *

"Q. What transpired after that in reference to this matter?    A. Well, she came back about 4 or 5 o'clock in the afternoon and wanted to know if I would take a dollar and thirty-five cents and settle it.    I says you owe me right now for stock that had been here and you agreed to pay it and you have not paid it. . I thought she wanted me to trust her, and I says I cannot take the dollar and thirty-five cents without you pay it all, and she did not make any answer; she just drove right away."

In other portions of the testimony the defendant also refers to damages committed by other stock at previous times, and, although the defendant does not specifically admit it, the overwhelming preponderance of the evidence shows that plaintiff did, on the evening of said day and before the commencement of this action, make him a tender of one dollar and thirty-five cents to settle the damages committed by the two horses in controversy at this particular time, and the costs of taking up and keeping them, which tender was declined by defendant. It was then made in the justice court, by depositing said amount of money therein, which amount has been kept on deposit, first in the justice and subsequently in the district court, for the use and benefit of defendant.

B. F. Fisher, the justice of the peace who, upon notice from the defendant, assessed the damages alleged to have been committed by the stock in controversy, together with the costs and expenses of defendant in taking up and keeping same, was called as a witness on behalf of defendant, for the purpose of showing that he assessed said damages in writing and filed same with the county clerk, as required by statute, and also for the purpose of identifying said writing; immediately after which, as shown by the record, the following proceedings were had:

"Defendant now offers to show, by the files of the county clerk's office, and introduce in evidence the written assessment made by the justice of the peace and filed there as required by law, to which counsel for plaintiff objects as incompetent, irrelevant and immaterial, for the reason that the justice had no jurisdiction to act in this case on account of it being outside of his township. Second, for the reason he did not have any jurisdiction for the reason the notices were not served within the proper time.Third, for the reason that the pretended report of the assessment is not in proper form to sustain it, which objection is sustained, to which ruling of the court the defendant objects and excepts.   Objection as to form withdrawn."

The record further discloses that plaintiff offered testimony tending to show that the damages committed by said horses, together with the amount necessary to pay a reasonable compensation to defendant for seizing and keeping them, was not in excess of the amount tendered by her, which said testimony was partially admitted, and then the following objection and ruling were made and exception taken, to-wit: "The defendant at this time further objects to going into the question of damages, for the reason that the plaintiff in this case has shown that the amount of damages, to corn and fodder, were arbitrated by and between her and the defendant in this case, which objection is by the court sustained, to which ruling counsel for plaintiff objects and excepts."

The reasons for the trial court's ruling in excluding the assessment made by the justice, are not discussed in the briefs and are not clearly perceptible to us; however, as defendant has assigned no cross-errors, this ruling can not now be considered; but, in the absence of proof of the

amount of damages assessed by the justice, it is evident that said court erred in excluding the testimony offered by plaintiff to establish the actual amount of such damages, at the time the tender was made, together with the amount reasonably necessary to pay defendant for the time, trouble and expense of taking up and keeping the horses. In fact, we think plaintiff had a right to introduce such testimony, even had the assessment of the justice been received in evidence, for the reasons that the justice may have assessed the damages too high, and that his assessment was made at a subsequent time to that of the tender, etc. The very object of that provision of our statute requiring notice to be given to the owner, is that he may pay the damages and expenses caused by the trespass committed by his stock and recover the possession of same without incurring additional expenses and costs. Hence, if the tender made by plaintiff to defendant was, in fact, sufficient to cover all such damages and expenses, we can perceive no principle of law or justice which would authorize defendant to further retain the possession of plaintiff's horses. We therefore conclude that the trial court erred, both in refusing to permit all the testimony offered upon this proposition to be introduced, and in failing and refusing to find as a fact the actual amount of such damages and expenses.

The view which we have taken of the question under consideration is also well supported by authority:

"If the owner admit the regularity of the proceeding, but disputes the amount claimed as damage or rent, as the case may be, he can tender the correct amount and demand the property, and, on a refusal, bring replevin, and thus try this issue. If he tendered sufficient, he will get the property; otherwise not." (Cobbey on Replevin,

sec. 348; also id. secs. 349, 470 and 516; *Allen v. Van Ostrand,* [Neb.] 27 N. W. 642; *Sloan v. Bain,* [Neb.] 66 N. W. 1013; *Butcher v. Wagoner,* [Neb.] 14 N. W. 160; *Tiffany v. St. John,* 65 N. Y. 314; *Johns v. Head,* [Kan.] 21 Pac. 236.)

In the case last cited, Justice Valentine, speaking for the court, says:

"It is admitted that the cattle in controversy belonged to Mrs. Head, and that she had the right to the immediate possession thereof, unless the defendants' claim thereto was paramount to hers. It is also admitted that the defendants, through Evarts, rightfully took the cattle up, and rightfully obtained the possession thereof in the first instance, leaving the following as the only disputed question in the case, to-wit: Did the possession of the cattle by the defendants at any time after they were taken up, and before the commencement of this action, become wrongful?   *   *   We think, however, for the reasons hereafter to be given, that the possession by the defendants of the aforesaid cattle became wrongful after they were taken up by Evarts and before the commencement of this action.   In the first place, it may be claimed, with great plausibility, if not with absolute correctness, that the demand made upon, and the tender made to, Evarts were entirely sufficient."

It is probable that the burden rested upon plaintiff to establish by a preponderance of the evidence that the tender made by her was sufficient to cover the amount of damages sustained by defendant, together with reasonable compensation for distraining the horses, but this is only a greater reason why plaintiff should have been permitted to introduce all the testimony she had upon the proposition.   As the amount of damages at the time the tender was made by plaintiff was a material issue in the trial of this case, more especially so in view of the fact

that the assessment of such damages made by the justice was excluded, it was evidently reversible error for the trial court to fail to make a finding thereon. (*Bowman v. Ayers*, [Idaho] 13 Pac. 346; *Duane v. Neumann*, [Cal.] 2 id. 274; *Hawes v. Green*, [Cal.] 3 id. 496; *Ross v. Evans*, [Cal.] 4 id. 443.)

It is contended by defendant in error that: "If the findings were indefinite and not sufficiently specific, or if some material fact was overlooked, plaintiff should have asked the court to have modified them, and to have made further findings," and cite in support thereof *Cowling v. Greenleaf*, (Kan.) 6 Pac. 907, wherein it is held: "If the plaintiff had not been satisfied with the findings of fact, he should have asked the trial court to have made further findings or modified those made."

We think plaintiff's request of the court in seasonable time to make findings of fact upon all the material issues involved in the trial, together with her exceptions to the findings made by the court, wherein special attention was called to the fact that the court had failed to make any finding upon the question of damages, are amply sufficient, when followed by a proper motion for a new trial, to save the question under consideration so as to base error thereon in this court. (*A. T. & S. F. R. R. Co. v. Ferry*, 28 Kan. 686; *Bowman v. Ayers, supra; Southern Pac. R. Co. v. Dufour*, [Cal.] 30 Pac. 783; *Paulson v. Nunan*, [Cal.] id. 845; *Hidden v. Jordan*, 28 Cal. 302.)

In the case last cited it is held that: "If the judge neglects to find the facts, or if he omits to find upon any issue essential to the determination of the case, an exception may be taken * * to the want of a finding in the

former case, or for a defect in the latter, but the exception for a defective finding must point out wherein the defect consists."

Counsel for plaintiff in error also complain that the trial court did not sign his findings, but, as it is shown that said findings were entered upon the journal of the court, there was clearly no error in his failure to sign them. (*McCullagh v. Allen*, 10 Kan. 150.)

Several other alleged errors are assigned and urged in this court, but, as they are not likely to occur again upon a retrial of this case, (if such trial should be had,) we do not deem it necessary to consider and dispose of them, inasmuch as the case must be reversed and remanded for a new trial for the reasons hereinbefore stated.

In concluding this opinion, however, we feel constrained to adopt substantially the language used by Chief Justice Maxwell, of the Nebraska supreme court, in *Allen v. VanOstrand, supra,* and say, "it is apparent that, by a little forbearance on the part of both or either of the parties to this action, the slight disagreement out of which it arose could have been amicably adjusted without the expense and annoyance of a suit that might so easily have been avoided."

The case is reversed and remanded for further proceedings in accordance with this opinion.

All the Justices concurring.