# CHARLESTON.

STATE *ex rel.* SAM HADDAD *v.* CITY OF CHARLESTON *et al.*

Submitted October 11, 1922.    Decided October 17, 1922.

1. LICENSES—*Licenses to Conduct Particular Business Not Inherently Harmful Cannot be Refused on Conditions not Prescribed by Ordinance.*

    A city council, in passing upon applications for licenses to conduct restaurants and transact other kinds of business not inherently harmful, cannot prescribe conditions or requirements, in the case of a particular application, in addition to those set forth in its ordinances, and, upon imposition of such new or additional conditions, requirements or regulations, refuse the license in the particular case, the applicant having complied with all the requirements previously prescribed.    (p. 59).

2. SAME—*No Arbitrary or Discretionary Power in Issuance of Licenses to Lawful Business Authorized by Ordinance.*

    A city council cannot, by ordinance, resolution or otherwise, reserve to itself power and authority arbitrarily to refuse such licenses, or to exercise discretion based upon facts and circumstances not prescribed in any of its ordinances, such as those pertaining to the place in which the applicant proposes to establish or conduct the business for which he desires the license.    (p. 60).

3. SAME—*License for Conduct of Lawful Business Cannot be Refused on Surmise That Applicant Will Violate it.*

    Nor can the council of a city whose ordinances provide for refusal of licenses to persons shown to have previously vio-

lated conditions of licenses of the kind they apply for and make no provision for refusal thereof to persons suspected of intent to violate them in the future, refuse a license applied for, upon the bare fear or surmise that the applicant, if the license is granted, will violate one or more of its conditions. (p. 60).

*Writ awarded.*

*Morgan Owen,* for relator.
*Donald O. Blagg,* for respondents.

POFFENBARGER, PRESIDENT:

The respondents, the mayor and members of the council of the City of Charleston, having refused the relator a license to conduct a restaurant, in a certain room within the City limits, upon his application made therefor, in due form and after compliance with the usual preliminary requirements, he has applied here, in the usual way, for a writ of mandamus to compel the issuance of such license.

The ordinances of the City pertaining to the subject of restaurant licenses is not materially different from those of the City of Huntington, respecting the same subject, which were interpreted and construed in *Houvouras* v. *City of Huntington,* 90 W. Va. 245, 110 S. E. 692. No person is permitted to conduct such a business without a license. No license granted shall be taken to legalize any act which might otherwise be in violation of law, or to exempt from any penalty prescribed for such violation. By sec. 93 of the ordinances, licensees are prohibited from doing or permitting numerous things specified therein. Sec. 94 reserves the power to the council to cancel or revoke licenses, for violation of any of the provisions of the preceding section. Sec. 95 forbids issuance of licenses to persons who have violated any of the provisions of Sec. 93, or permitted the doing of any act therein forbidden. It also reserves power to the council to refuse licenses to persons of immoral character and licenses

to be exercised in improper places. In other words, the council reserves to itself "absolute discretion" to refuse licenses in such cases. Sec. 100 purports to vest very full and complete discretion in the council. It reads as follows: "Nothing contained in this ordinance shall deprive or be construed to deprive, the council of the City of Charleston of the authority to prohibit, by resolution, the issuance of a license in any particular case in which it shall appear to the council to be proper to refuse to issue such license, or to refuse such license itself when application shall be made to the council therefor. And the doing of any of the acts enumerated in section 93 of this code of ordinances shall in all cases be deemed ground for refusing to issue or renew any license hereafter applied for. If it be shown in any case that the applicant is a person of immoral character and unfit to hold such license, or that such license is sought to be exercised in an improper place, council shall have the right to refuse or prohibit the granting of such license."

None of the things forbidden or proscribed by sec. 93 are charged against the applicant. He had a full hearing before the council and his application was denied upon grounds other than those mentioned in sections 93 and 94, as cause for revocation and refusal of licenses. One of the grounds upon which his application was refused is that he does not propose to establish, operate and maintain such a restaurant as, in the opinion of the council, ought to be authorized. In the verified return, it is charged that the relator intends to keep what is known as a "Hot Dog Stand," for the sale of sausages, sandwiches, ice-cream and the like. It is not denied by the return, that places of that kind are restaurants, within the meaning of the ordinances. The ordinances prescribe no requisites for restaurants. In other words, there are no regulations prescribing what shall be kept or maintained in a restaurant, or how it shall be conducted. The council cannot prescribe requirements for a particular license, after the application has been made in accordance with the existing ordinances. In cases of this kind, the conditions must be prescribed in advance so that all applicants may know what they are and how to comply with them.

Another ground is lack of good faith in the conduct of the business contemplated by the license, and purpose of the applicant, under cover and color of the license, to keep open a place of business on Sunday, for the sale of soft drinks, fruits, and the like. The relator shows by his application that he proposes to conduct a restaurant in a room separate and distinct from that in which his fruit store is conducted, although in the same building or an adjoining building. This ground is not well taken. If, after the grant of the license, the licensee shall conduct his business in such a manner, as to violate the Sunday ordinances, he will be guilty of an offense and become liable to punishment therefor. Moreover, on conviction of such an offense, his license could no doubt be revoked under clause d of sec. 93, saying no person having a license shall permit ''the violation of any penal law of the State or city by the holder of such license or his agent or employees therein.'' The purport of the return is not that the applicant proposes to carry on an illegitimate business, in the place in which he intends to conduct his restaurant, but that there is danger or probability of his doing so. That is all covered and provided for in the ordinance. Applicants may have licenses if they are not shown to have been guilty of some offense or to be of immoral character, subject to power in the council to revoke their licenses for violations of law and for doing any of the things forbidden by section 93. It is to be observed that section 94 provides for revocation on such grounds and section 95, for the refusal of licenses to those who are shown to have been guilty of the forbidden conduct or to be of immoral character or unfit to hold such licenses. Not a word in the ordinances purports to reserve authority in the council to refuse a license on the bare fear that the applicant will violate its conditions.

Of the provisions in the ordinances purporting to reserve power in the council to refuse licenses for the conduct of restaurants in improper places, and the provisions purporting to reserve arbitrary discretion and power to refuse licenses in any case, upon such circumstances as may be deemed sufficient in the opinion of the council to justify the refusal

thereof, it suffices to direct attention to what is held on that subject, in *Houvouras* v. *City of Huntington*, to which reference has been made. In all instances in which the ordinances do not prescribe the conditions upon which licenses of the kind involved here are to be had, so that all may know what those conditions are and may stand upon an equal footing, as to the right to obtain such licenses, the applications therefore must be granted. The council cannot, by ordinance, resolution or otherwise, reserve to itself power to grant or refuse licenses for the conduct of an inherently harmless business, according to whim or caprice or in any arbitrary manner.

For the reasons stated, a peremptory writ of mandamus will be awarded.

*Writ awarded.*