MISSOULA CLINIC PHARMACY, a corporation, Petitioner and Appellant, v. JACK ZIMMERMAN, EARL BECK, and LLOYD A. THOMES, all members of the Montana State Board of Pharmacy, Respondents and Respondents.

No. 11603.
Submitted April 18, 1969.
Decided May 15, 1969.
Rehearing Denied June 3, 1969.
454 P.2d 619.

Boone & Karlberg, Karl Karlberg, argued, Missoula, for appellant.

Sandall, Moses & Cavan, Charles F. Moses, argued, Billings, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by an applicant for a license to operate a pharmacy from a district court judgment affirming the license denial by the Montana State Board of Pharmacy.

The single controlling issue on this appeal is whether the State Pharmacy Act grants authority to the Montana State Board of Pharmacy to deny a license to operate a pharmacy solely on the ground of ownership by physicians. The district court held that it does. We reverse.

Plaintiff here is Missoula Clinic Pharmacy, a Montana corporation, which seeks a license to operate a pharmacy hereafter called applicant). Defendant is the Montana State Board of Pharmacy, a state administrative board created by legislative act (hereafter called the board). Also involved herein but not parties to this action are the Western Montana Clinic, a group of physicians associated together in medical practice (hereafter called the clinic); and the Western Montana Clinic Building Corporation, which is wholly owned by physicians (hereafter called the building corporation).

97% of applicant's capital stock is owned by the building corporation. 1% of the stock is owned by Charles R. Anderson, a registered pharmacist who is president of applicant; 1% of the stock is owned by Wayne F. Gillette, a registered pharmacist who is vice-president of applicant; and 1% of the stock is owned by E. W. Orth, the business manager of the clinic who is also secretary-treasurer of applicant. There are six directors of applicant—the three named officers and three physicians associated with the clinic.

On August 19, 1968 applicant applied to the board for a license to operate a pharmacy in the clinic building in Missoula. The application was submitted on a form prescribed by the board, all information requested by the board was furnished, and the $5.00 application fee was tendered. The board determined that further investigation was required in two areas: (1) the ownership of the building corporation, and (2) the charter powers of the building corporation. Further investigation disclosed the building corporation was wholly owned by physicians and that the building corporation owned 97% of the capital stock of applicant. This prompted the

board to call a hearing on applicant's license application.

The hearing before the board was held on September 27, 1968 at which time evidence was received in the form of oral testimony and documentary exhibits. Thereafter the board entered its order denying applicant a license to operate a pharmacy.

Applicant appealed from the board's order to the district court of Missoula County where the case was heard by the court without a jury. Applicant's evidence consisted of the transcript and exhibits at the board hearing. The board introduced both oral and documentary evidence in district court, the substance of which concerned the views of the president of the board as to its powers and authority together with the motivating reasons why it took the action it did on the license application.

On November 15, 1968 the district court entered findings of fact, conclusions of law, and judgment dismissing applicant's petition for a license. The gist of the court's decision was that the board had the power to determine whether the license should be issued, did not abuse its discretion in denying the license, and did not act arbitrarily and capriciously. The court determined that the main reason the application was denied was the board's feeling "that pharmacies should not be owned by members of the medical profession, either individually or under cover of some corporation."

Applicant filed exceptions to the findings of the district court which were denied. This appeal followed from the findings of fact, conclusions of law, and judgment of the district court.

Applicant assigns 10 issues for review upon this appeal which in our view can be reduced to a single controlling issue —does the State Pharmacy Act grant authority to the Montana State Board of Pharmacy to deny a license to operate a pharmacy solely on the ground of ownership by physicans?

At the outset in our analysis of this issue, we draw no

distinction here between the physicians' indirect ownership of applicant through ownership of the capital stock of the building corporation and a situation involving direct ownership of a pharmacy by physicians. In either case physicians have the right of control of the management and operation of the pharmacy. In the instant case, we simply pierce the corporate veil of the building corporation to determine the true nature of the situation and find that the physicians here are the real owners of applicant with a general right of control incident to such ownership. Accordingly if the board has the power to deny a license to a pharmacy on the basis of direct ownership by an individual physician, it has the same power of denial in the instant case.

We also observe suggestions in the record that the registered pharmacists who are officers of applicant are also involved in the operation of other pharmacies in addition to applicant. We reject any suggestion that this may furnish independent grounds for denial of the license in the instant case. The record is replete with evidence that the license denial here was based on indirect ownership of the pharmacy by physicians. The issues were carefully framed during proceedings before the board and the district court as well as upon this appeal to secure a determination by this Court of the power and authority of the board to deny a license on this basis. The district court made an express finding that "It appears to the Court that the main reason the application was denied by the Board was their feeling that pharmacies should not be owned by members of the medical profession, either individually or under cover of some corporation." The district court made no finding of any other basis for denying ths license. Therefore we will treat the board's denial as based on ownership of applicant pharmacy by physicians.

Determination of the single controlling issue on this appeal as heretofore stated involves examination of the State Pharmacy Act (sections 66-1501 through 66-1527, R.C.M.1947, as

amended) to ascertain whether the legislature has granted the board power and authority to deny a license to operate a pharmacy on the basis of ownership by physicians. It is important to note that the issue here is not whether ownership of a pharmacy by physicians is good or bad in itself, nor whether it should or should not be prohibited. The issue is simply whether the legislature has established a policy prohibiting such practice and has granted the board power and authority to deny a license to operate a pharmacy on this basis.

The State Pharmacy Act provides that it shall be unlawful for any person to compound, dispense or sell at retail any drugs except in a pharmacy by a registered pharmacist other than as provided in the pharmacy act (section 66-1501, R.C.M. 1947). It defines "person" to include a corporation as well as a natural person (section 66-1502, R.C.M.1947). A procedure is provided for registration of an individual as a licensed or registered pharmacist (section 66-1506, R.C.M.1947). It also provides a procedure for securing a license to operate a pharmacy in the following language:

"The state board of pharmacy shall require and provide for the annual registration and licensing of every pharmacy now or hereafter doing business within this state within the meaning of the act. Upon presentation of evidence satisfactory to the board and upon application upon such form as the board may prescribe and upon the payment of an annual fee of five dollars ($5.00), the board shall license any pharmacy as a "CERTIFIED PHARMACY," provided, however, that such license shall be granted only to such pharmacies as are operated by registered pharmacists * * * qualified as herein prescribed * * *." (section 66-1508(b), R.C.M.1947, as amended).

Pursuant to its authority to issue regulations for the purpose of carrying out the provisions of the pharmacy act, the board issued one regulation with respect to corporations applying for licenses to operate pharmacies:

"If the applicant be a corporation its president and one other of its officers must be registered pharmacists in good standing in the State of Montana and that they will be actively and regularly engaged and employed in, and responsible for the management, supervision and operation of each of such pharmacy or drug store." (Regulation 1-55 of the Montana State Board of Pharmacy).

The powers of the board are enumerated in section 66-1504, R.C.M.1947, none of which relate to denial of licenses to operate pharmacies beyond a general power "To perform such other duties and exercise such other powers as the provisions of the act may require". There is a specific provision relating to suspension, revocation, and refusal to renew licenses to operate pharmacies on the grounds of false representation, fraud, operation of a pharmacy without a registered pharmacist in charge, conviction of violation of the pharmacy act, and certain designated felonies, (section 66-1508(c), R.C.M.1947).

The pharmacy act also exempts physicians from inspection by the board and permits them to compound and furnish drugs to patients (section 66-1525, R.C.M.1947).

Despite the ingenious arguments advanced by the board, a simple reading of the statute discloses no legislative grant of power to the board to deny a license on the basis of ownership by physicians. It is beyond cavil that no express grant of such power is contained therein. Neither can such power be implied from any provisions of the act. The general pattern of the act provides for board control over operation of pharmacies by (1) a qualification and licensing system of pharmacists who operate them, (2) requirements and prohibitions on the operations of pharmacists and pharmacies, and (3) suspension and revocation of licenses for violations together with criminal penalties. Nowhere in the act is there any indication, express or implied, of a legislative policy to exclude physicians from ownership of pharmacies. There being neither a grant of

power to the board to deny a license to operate a pharmacy on the basis of ownership by physicians, nor a legislative policy to exclude physicians from ownership of pharmacies, the board simply has no such authority.

But we do not base this conclusion solely on the absence of such grant of power or the absence of such legislative policy. Here, there is an express legislative policy to the contrary in the act itself. Section 66-1525(a), R.C.M.1947, provides in material parts as follows:

"Nothing in this act shall * * * prevent [a physician] from compounding or using drugs * * * in his practice nor prevent [a physician] from furnishing to a patient such drugs * * * as he deems proper in the treatment of such patient."

If physicians have authority to prepare and furnish drugs to patients under the act, how can it be construed to prohibit them from owning a drug store? The obvious answer—it can't and it doesn't.

This reduces the present case to its proper perspective and indicates the true nature of this controversy. In our view, this case essentially involves a trade dispute between druggists and doctors garbed in the language of public health and welfare. The record reveals that this is primarily an economic dispute with veiled suggestions of unfair competition and unethical trade practices. It is difficult for us to find an implied power in the board to act in this area. Whatever the true relationship between physician-owned pharmacies and public health may be, the evidence in this case showing any adverse effect on public health is nebulous if not nonexistent.

Basing our decision as we have on the absence of authority in the board under the act to deny the license on the basis of ownership of the pharmacy by physicians, we need not consider the question of constitutionality of the act under an interpretation presupposing a grant of such authority.

We have carefully considered all contentions of the board

concerning the jurisdiction and powers of the board to deny the license in question. We see nothing in the Professional Service Corporations Act that requires a different result from that herein announced. These contentions were ably and thoroughly presented in its brief and oral argument. However, we are unable to agree with the board's position for the reasons heretofore set forth.

This cause is remanded to the district court for entry of conclusions of law consistent with the views expressed herein together with judgment granting applicant's petition.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and BONNER, concur.

MR. JUSTICE JOHN C. HARRISON (dissenting):

I dissent.

The majority chose to limit this case to a "haec verba" interpretation of the statutes giving little consideration to the discretionary powers of the administrative pharmacy board. If this board is without discretionary powers, but is one of rubber stamp abilities, then why were professional men put on the board by the legislature? It is my view that the legislature realizing it could not anticipate all the problems of a profession put men on the board whose education and business experience gave them knowledge that would provide administrative standards and guide lines which would serve the public interest.

In this case a full and complete hearing was held by the board giving the appellant-clinic ample opportunity to present its case. The board ruling was appealed to the district court and the Hon. E. Gardner Brownlee, judge of the fourth judicial district, held a hearing, reviewed the transcript of the board's hearing and sustained the decision of the board in denying the license.

The board through evidence presented and its own know-

ledge knew that the Montana Medical Association, by resolution, does "condemn physician owned clinic pharmacies as unethical, unwarranted and detrimental to good medicine and pharmaceutical service." Ethics, being that branch of moral science which treats of duties which a member of a profession owes the public, should, I believe, be a controlling factor, as it was, in the board's decision. Not to recognize their discretionary power to do so is in my opinion error.

In addition to its discretionary powers, the board most certainly operating within its administrative powers can protect the public health of the citizens of this state. As both citizens and professional men they could not but be aware of the ugly charges revealed during recent Senate hearings to the effect that some physicians engaged in nefarious practices—prescribing unsuitably, overprescribing, overcharging and foreclosing the patient's freedom of choice when the physician owns the pharmacy. In such cases the patient is a captured customer.

By the adoption of ethical standards prohibiting this condition both the American Medical Association and the Montana Medical Association have attempted to police their members.

The pharmacy board action in recognizing these ethical standards as a guide in Montana was neither arbitrary nor capricious and in my opinion we should have recognized it as a controlling factor as it relates to the administration of a police regulation and as necessary to protect the general welfare and safety of the public. This Court in State ex rel. Altop v. City of Billings, 79 Mont. 25, 255 P. 11, 54 A.L.A.1091, set forth certain exceptions to the general rule on the exercise of the police powers by a city commission that are in my opinion applicable and controlling here and as the board set forth in its brief "It would be a strange rule of law indeed that in the case of rooming houses there could be unlimited discretion where as in the case of pharmacies which are handling danger-

ous drugs and must have certain qualifications that this power does not exist insofar as the State Board of Pharmacy is concerned."