STEPSON *v.* BRAND.

Apr. 7, 1952.

No. 38278 (58 So. (2d) 18)

Melvin, Melvin & Melvin, for appellant.

Matthew Harper, Jr., for appellee.

**Holmes, J.**

This suit is a contest between the appellant and the appellee over life insurance in the amount of $3,000 on the life of Arthur Stepson, deceased. The insurance was procured by the said Arthur Stepson by virtue of his employment by the Masonite Corporation, and arose under group insurance policies issued to said corporation by the Aetna Life Insurance Company and certificates of insurance issued thereunder to the said Arthur Stepson as an employee of said corporation.

The appellant and the appellee having each asserted a claim to the proceeds of the insurance upon the death of Arthur Stepson, the Aetna Life Insurance Company filed its bill of interpleader in the Chancery Court of the Second Judicial District of Jones County, admitting its liability for the amount of the insurance and tendering the same into court and praying that the claimants be summoned into court for the determination of their respective claims.

The claimants answered, asserting their respective claims, and by consent of all of the parties, the Aetna Life Insurance Company having paid into the registry of the court the amount of the insurance, a decree was entered discharging the company of all liability and directing that the cause proceed to trial on the claims of the respective claimants.

The appellant asserted claim to the insurance by virtue of a gift from the insured. The appellee claimed the insurance as the named beneficiary in the insurance certificates at the time of the death of the insured.

The trial of the cause resulted in a decree in favor of the appellee, Rosie Lee Stepson, and the appellant, Emma M. Stepson, prosecutes this appeal.

The undisputed evidence is as follows: Emma and Arthur were married on June 4, 1918 and were never divorced. On October 26, 1944, Arthur became an employee of the Masonite Corporation and so continued until

his death on October 9, 1950. By virtue of his employment, he acquired life insurance in the aggregate amount of $3,000, for which certificates of insurance were issued to him pursuant to group insurance policies maintained in force by his employer. The required insurance premiums were paid by Arthur or by deductions from his wages. In the original insurance certificates, Arthur designated Emma, his wife, as the beneficiary. The right was reserved in the certificates to designate a new beneficiary on written request of the insured filed in the home office of the insurance company or at the office of the employer. As Arthur obtained the certificates of insurance he took them home and gave them to Emma, with whom he was living, telling her that he was giving them to her as a gift so that she might have something to live on after he was gone. He surrendered the manual possession of the certificates to Emma and she placed them in her trunk where they remained until after Arthur's death. In the meantime, Emma exercised complete control and dominion over the certificates and Arthur never thereafter claimed the certificates or exercised any control or dominion over the same. Arthur told the witness Sara Davis in March, 1950, that he had given his wife all of his insurance and that she would be in good shape if anything happened to him. He told the witness Leroy Barrett about two years prior to the trial of this cause that he had given all of his insurance to Emma. The witness Maudie Lee Barrett was in the home of Emma and Arthur on an afternoon in 1944 and saw Arthur give one of the "policies" to Emma and heard him tell Emma that it was hers and that he wanted her to have them and that if he should happen to pass first she would have the "policies" to live on. The witness Laura Johnson talked to Arthur during the first part of 1950 and heard him say that if he was killed Emma would be better off; that she would have nothing if he lived but if he didn't, she would have something. The witness Rufus Blanton was in the home of Emma and Arthur in about the year

1944 and saw Arthur bring some of the "policies" and give them to Emma, saying that he was giving them to her. The witness Jo Ella Michles saw Arthur in the hospital about a year before he died, where he was suffering from an injury which he received at the Masonite Corporation. He told her that if he had died his wife would be "sitting big"; that he had given Emma his "policies for a gift."

On June 18, 1949, Rosie Lee entered into a ceremonial marriage with Arthur. On June 7, 1950, Arthur went to the office of the Masonite Corporation and told Mrs. Rosemary Shoan, the secretary of the Masonite Corporation and in charge of the insurance records of the corporation, that he wanted to change the beneficiary in his "policies" to Rosie Lee as his wife. He did not have the insurance policies or certificates with him. Mrs. Shoan prepared the written request for the change of beneficiary and Arthur signed it and she issued and delivered to Arthur an insurance certificate designating Rosie Lee as the beneficiary and he brought the certificate to Rosie Lee and told her that he wanted her to have it, that it was hers.

Emma knew nothing of the pretended marriage between Rosie Lee and Arthur, nor of the attempted change in the beneficiary, until after the death of Arthur.

Emma claimed to have lived with Arthur from the date of her marriage to him on June 4, 1918 to the time of his death and Rosie Lee claimed to have lived with him from the time of her pretended marriage to him on June 18, 1949 to the time of his death.

On the foregoing evidence, the chancellor found that Arthur had given his insurance certificates to Emma but held that in view of the fact that the certificates reserved to the insured the right to designate a new beneficiary, the gift was subject to this right and he accordingly awarded the proceeds of the insurance to Rosie Lee.

There can be no doubt under the undisputed evidence that Arthur made a gift of the insurance cer-

tificates to Emma prior to the attempted change in beneficiary and that all of the essential elements of a gift were present; that is to say, he delivered the manual possession of the certificates to Emma and completely and absolutely surrendered all power and dominion over them and stated as his reason for so doing that Emma would have something to live on after his death, thereby manifesting a clear and unmistakable intention on his part to part absolutely with the title to the insurance.

The question presented by this appeal, therefore, is whether there can be a valid parol gift of an insurance policy, notwithstanding the reservation in the policy of the right to change the beneficiary.

The exact question does not appear to have been heretofore decided by this court. In the case of Security Mutual Life Insurance Co. v. Brunson, 176 Miss. 893, 170 So. 824, 827, the Court refrained from deciding the question, saying: ''We are relieved from the necessity, in view of the facts of this case, of deciding whether or not a written contract of life insurance may be made the subject of absolute gift by an oral contract and manual delivery, or under what terms and conditions such an oral contract can be made, if at all.''

It may be conceded that in some jurisdictions it has been held that a verbal assignment of an insurance policy, even accompanied by a manual delivery of the policy, will not create a title, either legal or equitable, in the donee. There is some diversity too in the conclusions reached in some jurisdictions, dependent upon whether the policy involved was one issued by a so-called ''old line insurance company'', as in the case at bar, or whether the insurance consisted of a certificate of membership in a benefit association, the rules of which require strict compliance with the rules of the association in order to effect a gift of the benefits of the certificate to a person other than the one named therein as beneficiary.

According to the great weight of authority, however, the parol gift of a life insurance policy is valid where

there is delivery of the policy by the donor to the donee and the other essential elements of a gift are present. In 24 Am. Jur., page 766, Sec. 70, it is said:

"The general, if not the universal, rule is that a policy of insurance on the life of the donor may be made the subject of a gift in the same manner as any other chose in action. All the essential elements of a valid gift must be present. There must be a complete and absolute surrender of all power and dominion over the policy, and there must be an intention on the part of the donor to part absolutely with the title to it. In most jurisdictions, the gift of a policy of life insurance is valid, in the absence of a written assignment, provided there is a delivery of the policy by the donor to the donee."

Supporting this view also are 38 C. J. S., Gifts, Sec. 53, p. 838; First National Bank v. Liberty Trust Co., 151 Md. 241, 134 A. 210, 47 A. L. R. 730 and annotations thereto; Jennings v. Jennings, 250 Ala. 130, 33 So. (2d) 251; McDonald v. McDonald, 215 Ala. 179, 110 So. 291.

The rule which most jurisdictions recognize is stated in Guardian Life Insurance Company of America v. Mareczko, 114 N. J. Eq. 369, 168 A. 642, 644, as follows: "A policy of life insurance may, like other choses in action, be assigned as a gift inter vivos, and the assignment requires no consideration to support it. The mere delivery of the policy to the donee, without written assignment, but with a clearly manifested intention to make a gift, is sufficient to satisfy the rule requiring delivery of the thing given."

In McEwen v. New York Life Insurance Co., 42 Cal. App. 133, 183 P. 373, 375, it is held that "a life insurance policy may be made the subject of a parol gift" to the beneficiary named therein, notwithstanding the reservation in the policy of the right to change the beneficiary. In Christian v. Merchants National Bank & Trust Co., 188 Miss. 586, 195 So. 485, this Court recognized the right of an insured to assign by delivery, and without formal assignment, and without the consent of the beneficiary,

insurance policies which reserve to the insurer the right to change the beneficiary. And in Security Mutual Life Insurance Co. v. Brunson, supra, the court observed that an insurance policy is a chose in action and that the delivery thereof is prima facie evidence of a gift thereof. In Harmon v. McFarlane, 135 Miss. 284, 99 So. 566, this court held that a chose in action such as a promissory note may be the subject of a parol gift.

While this court has not heretofore decided the exact question here presented, we think that its views as expressed in the cited cases are consistent with the great weight of authority which holds that there may be a valid parol gift of an insurance policy where there is a delivery of the policy by the donor to the donee and the other essential elements of the gift are present. We, therefore, hold that a policy of life insurance such as is involved in this case may be made the subject of a valid parol gift, provided all of the essential elements of a gift are present. The chancellor held that Arthur had given the certificates to Emma but that since the right was reserved in the certificates to change the beneficiary, the gift was subject to such right. In this, we think the learned chancellor was in error. It is true that Emma as the beneficiary named in the certificates had only an expectancy of benefits prior to the completed gift of the certificates to her. As was said in the case of Faulkner v. Faulkner, 192 Miss. 358, 5 So. (2d) 421, 422: "Under the policy, the original beneficiary had no vested rights but only an inchoate imperfect and ambulatory right prior to insured's death." It should be borne in mind, however, that while the insurance certificates here involved reserved to the insured the right to change the beneficiary on his written request to the company, they did not provide that the insurer must approve or assent to the choice of a new beneficiary, or that the change to be effective must be endorsed on the certificates, or that the certificates must accompany the request for the change. The requirement for the request for the change of beneficiary to be in writ-

ing was for the benefit of the company and subject to waiver by the company. The payment by the company of the proceeds of the insurance into court in discharge of its liability was ample proof of such waiver. Riley v. Wirth, 313 Pa. 362, 169 A. 139. However, the power in Arthur to change the beneficiary was itself subject to waiver and could itself become the subject of a gift. In Mahoney v. Crocker, 58 Cal. App. (2d) 196, 136 P. (2d) 810, 814, the court said: "But the power to change the beneficiary may be waived. That power may itself be the subject of a gift. If, by contract or by way of gift, the right to change the beneficiary is waived, the beneficiary secures a vested interest which may not be defeated by the insured attempting to change the beneficiary."

Hence, Arthur had the right, without notice to the company, by a completed gift of the insurance to Emma, to waive or grant away his power to change the beneficiary and convert Emma's expectancy into a vested interest, which was not subject to be defeated by a subsequent attempt to change the beneficiary. We are of the opinion that Arthur exercised this right and made a valid, completed gift of the insurance to Emma and that Emma's expectancy or inchoate right was thereby merged into a vested right to the insurance and that such right was not defeated by Arthur's later attempt to designate Rosie Lee as beneficiary, and that, therefore, Emma was entitled to the proceeds of the insurance.

We are mindful of the fact that █ proof of the gift in cases of this character should be clear and convincing so as not to open the way to fraud arising out of the mere possession of a pretended gift at the time of the death of the alleged donor. We think the case at bar, however, meets all of the requirements of a valid, completed gift of the insurance to Emma and that her vested right thereto by virtue of the gift was not defeated by the insured's subsequent attempt to change the beneficiary.

The decree of the court below is accordingly reversed and a decree entered here for the appellant.

Reversed and decreed here for the appellant.

**McGehee, C. J.,** and **Alexander, Hall** and **Kyle, JJ.,** concur.