HOLDEN, Respondent, *v.* VARNER, Appellant.

No. 9167.

Submitted January 14, 1954. Decided July 9, 1954.

272 Pac. (2d) 1008.

Messrs. Taylor and McKenna, Mr. Donald W. McKenna, Hamilton, for appellant.

Mr. Edward T. Dussault, Missoula, for respondent.

Mr. McKenna and Mr. Dussault argued orally.

MR. CHIEF JUSTICE ADAIR:

This is an appeal by defendant from a judgment entered against him on a jury's verdict awarding plaintiff $250 damages for the castration by defendant of plaintiff's bull.

Defendant assigns as error the insufficiency of the evidence,—that the jury disregarded the law,—that the trial court admitted improper evidence and refused to give an instruction offered by defendant.

At the time here involved the plaintiff, LeRoy Holden, owned a farm located about three miles distant from Stevensville, Montana. In the spring and summer of 1950 plaintiff owned sixteen head of cattle which were permitted to graze in a fenced pasture on such farm. Holden's herd consisted of 15 head of female cattle and a purebred Guernsey bull born July 1, 1949, and having register number 448090.

The defendant, Hal Varner, resided upon and operated a farm situate to the west and a little south of plaintiff's farm. The northeast corner of defendant's farm would be the southwest corner of the plaintiff's farm. The farms would adjoin except for a road which runs westerly past plaintiff's farm and along the northerly boundary of that of defendant.

The buildings on the two farms are about one-half mile apart.

An irrigation ditch which conveys water to the defendant's farm extends through the pasture on the plaintiff's farm, in

which pasture plaintiff kept and grazed his cattle. The head-gate on defendant's ditch is located on plaintiff's farm.

At times plaintiff's cattle would get through the fence enclosing plaintiff's farm and then run at large on the road or highway so extending along the north boundary of defendant's farm. These facts were known to the plaintiff,—to his tenant and caretaker, James Gallant, and to other persons residing in that locality.

The defendant testified that the bull involved in this suit got under the fence whenever he felt so inclined; that from the 10th to the 20th of July 1950, defendant drove the bull out of defendant's pasture pretty nearly every day; that defendant did not know who owned the bull; that on July 29, 1950, when defendant returned to his farm from town he found the bull breeding one of defendant's Shorthorn heifers; that thereupon defendant roped, tied and castrated the bull just as soon as he could; that defendant then went to see if there were any fences down and found that the bull had crawled under defendant's fence where such fence crossed his irrigation ditch; that he found the bull's tracks in the mud in the ditch and that defendant's fence was then in good condition.

Defendant further testified that after castrating the bull he disinfected the animal and then kept it in a corral for a day when he released it; that at that time defendant did not know who owned the bull; that he found no distinguishing marks or brands on the animal; that it was not until the day after defendant castrated the animal that plaintiff came to defendant's home and inquired of defendant if defendant had castrated a Guernsey bull; that when defendant answered in the affirmative, plaintiff then said that it was plaintiff's bull and that defendant would have to pay for it and that thereupon defendant told plaintiff that as defendant could not keep the bull off his (defendant's) property, it became necessary for him to castrate the animal.

The important question presented by the evidence, the court's

instructions to the jury and the briefs of counsel is, did the defendant have the lawful right to castrate plaintiff's bull?

The plaintiff testified that in July 1950 and prior to Sunday, July 29, 1950, plaintiff's cattle were running at large on the road or highway that extends between his farm and that whereon defendant lived; that defendant's headgate was located upon and that his irrigation ditch goes through that portion of plaintiff's farm where plaintiff kept his cattle, including the bull; that plaintiff had seen the defendant at the headgate on defendant's ditch; that after the bull had been castrated plaintiff had a conversation with defendant about the bull but that during such conversation defendant at no time said anything about making any attempt to find or notify the owner of the bull and that at no time did defendant ever notify plaintiff either verbally or by mail or otherwise that the bull had been trespassing on defendant's land or that defendant was keeping the bull on defendant's premises.

Plaintiff further testified that he also saw defendant's cattle on said highway from about July 15 to July 29, 1950; that prior to May 1950, plaintiff had been offered $500 for the bull in question and that after its castration it would be difficult to sell such animal of dairy stock as steer beef.

At the times in question James Gallant was a tenant on plaintiff's farm where he cared for plaintiff's livestock. Mr. Gallant testified that customarily the bull was kept in a pasture in the north corner of plaintiff's ranch; that the witness last saw the bull on the Thursday or Friday before Sunday, July 29th, whereon the animal was castrated; that with his many other duties the witness could not and that he did not observe the whereabouts of the bull each day; that on Monday, July 30th, the witness talked with the defendant who at that time said that he (defendant) did not know whose bull it was and that defendant had kept the animal on defendant's farm for a day and two nights.

The witness Gallant further testified that prior to the time the bull was castrated no one contacted him, nor did he know

of anyone making any attempt to contact him regarding the bull; that in cleaning out defendant's irrigation ditch and headgate it was necessary to cross the pasture wherein plaintiff's cattle customarily were kept and where they could easily be seen.

It stands undisputed that the bull was a "purebred dairy bull" and his certificate of registration, giving him his name as "Western Royal Hale Spot" and his register number 448090, was received in evidence without objection.

Not only did plaintiff testify that his cattle were running at large on the highway in July 1950 and prior to the time plaintiff's bull was castrated, but at page 19 of defendant's printed brief filed in this court, defendant says: "It is obvious here that from the testimony discussed, supra I (b) this bull ran at large and also trespassed, and in fact was a trespasser when castrated."

R. C. M. 1947, sec. 46-1719, reads: *"Taking up and castrating bulls, notice to owner.* Any bull found running at large on the open range or national forest reserve in violation of the provisions of this act may be caught and castrated by any person finding such a bull; *provided, any purebred dairy bull found running at large may be taken up and party holding bull shall notify the owner in person,* and if the owner of such bull does not take possession of said bull *within twenty-four hours after being notified, party holding* such bull may castrate him." (Emphasis supplied.)

The trial court without objection gave the above quoted section in full as its instruction No. 9, and in conjunction therewith its instruction No. 9-A reading: "You are instructed in reference to the foregoing instruction that it is the duty of the party holding said bull, or finding said bull on his premises, to exercise reasonable care to ascertain the owner thereof and to notify him."

After the case was submitted to the jury they returned into court and submitted the following written question: "Definition is requested of expression 'allowed to run at large.' Does this imply that such being at large is with the knowledge and consent of the owner or caretaker?"

Thereupon, and without objection, the trial court instructed the jury as follows: "The Court: You are instructed in answer to your question that livestock may be at large as used in this statute with the knowledge and consent of the owner, or they may be at large where owner fails to exercise reasonable care to keep them on his own land or on land of which he has legal possession and control. You are instructed that reasonable care is that degree of care which prudent or reasonable persons would be likely to exercise in the circumstances of each case."

There is ample evidence tending to show and from which the jury could well conclude and find that defendant did not exercise reasonable care to ascertain who owned this Guernsey bull and to notify such owner or owners in person or otherwise as required by said section 46-1719, R. C. M. 1947.

There is evidence that the plaintiff and defendant were neighbors,—that their respective ranch houses were only one-half mile apart with wire fences enclosing each ranch and a highway running between them on which highway plaintiff's livestock including the Guernsey bull as well as female Guernsey cattle frequently ran at large.

It would not have been either unnatural or unreasonable for the defendant to have contacted the plaintiff or plaintiff's caretaker to ascertain what if anything either knew about this ill-fated Guernsey bull. This defendant admits he wholly failed to do.

While there is some conflict in the decisions as to just when livestock may be said to be "running at large" yet under the majority rule as applied to the evidence herein, it is apparent that plaintiff's bull was "running at large"; that defendant knew it and that he should have given notice or endeavored to give notice to the owner before castrating the bull as is required by R. C. M. 1947, sec. 46-1719.

In Lemery v. Leonard, 99 Or. 670, 196 Pac. 376, 377, the court said: "The principle underlying the question under discussion is that, if the animals are beyond the control of their owner, they are 'at large,' irrespective of the place where they

may be. For instance, in Conway v. Jordan, 110 Iowa 462, 81 N. W. 703, it was held that if the plaintiff turned his bull into a pasture that was not properly fenced and that did not restrain him, and the bull escaped therefrom into an adjoining field, he would be at large." Also see Hosley v. Bamber, 199 Mich. 655, 165 N. W. 687; Gilbert v. Stephen, 6 Okl. 673, 55 Pac. 1070; City of Paris v. Hale, 13 Tex. Civ. App. 386, 35 S. W. 333; Fraser v. Hawkins, 137 Ark. 214, 208 S. W. 296; Duggan v. Hansen, 43 Neb. 277, 61 N. W. 622; State v. Poplowski, 104 Conn. 493, 133 A. 671; Spiegel v. Straw, 196 Mich. 581, 163 N. W. 4; 3 C. J. S., Animals, sec. 131, p. 1231 and sec. 139, p. 1238.

In Russell v. Sunburst Refining Co., 83 Mont. 452, 470, 272 Pac. 998, 1006, the court said: "The instructions of the court to the jury must be considered in their entirety, and where as a whole they correctly state the law, and where instructions general in their nature are by specific instructions limited to the facts in the case, error cannot be predicated on an instruction that is incomplete or too general."

At defendant's request the trial court gave instruction No. 16 reading:

"You are further instructed that under the law a person has the right to employ all reasonable means for the protection of his property, and in this case the defendant had the right to use such means as a man of ordinary prudence would believe necessary in order to protect his cattle from plaintiff's bull. And if you find from the evidence that defendant acted in the same manner as an ordinary prudent man would have acted under the same circumstances then the plaintiff cannot recover; and therefore if you find that defendant so acted at the time he castrated plaintiff's bull, the defendant is not liable to the plaintiff in any amount."

Notwithstanding the giving of the above instruction, the jury, after hearing the witnesses and considering their testimony, found for the plaintiff.

While there is considerable conflict in some of the testimony

218

there is much substantial evidence which, if believed, amply sustains the jury's verdict.

A verdict based on substantial but conflicting evidence will ▆ not be disturbed on appeal.

In State v. Messerly, 126 Mont., 62, 244 Pac. (2d) 1054, 1057, this court said: "It is for the jury and not the reviewing court to determine the credibility of a witness and the weight to be given to his testimony."

In Carey v. Guest, 78 Mont. 415, 424, 258 Pac. 236, 238, this court said: "The judgment is based on the verdict of the jury. A judgment will not be disturbed when there is substantial evidence to support it. Tuttle v. Pacific Mutual Life Ins. Co., 58 Mont. 121, 190 Pac. 993, 16 A. L. R. 601. When there is a substantial conflict in the evidence the Supreme Court, on appeal, will not reverse the judgment on the ground of insufficiency of the evidence. Sanborn Co. v. Powers, 58 Mont. 214, 190 Pac. 990." See also, Robinson v. F. W. Woolworth Co., 80 Mont. 431, 447, 261 Pac. 253; Chancellor v. Hines Motor Supply Co., 104 Mont. 603, 612, 69 Pac. (2d) 764; Reynolds v. Trbovich, Inc., 123 Mont. 224, 226, 210 Pac. (2d) 634.

Finding no reversible error in the record before us the judgment of the trial court is affirmed.

MR. JUSTICES BOTTOMLY, ANGSTMAN, FREEBOURN and ANDERSON, concur.