CHELSEA FEELY and ALLIE FEELY, Plaintiffs and Respondents, v. ETTA LACEY, Defendant and Appellant.

No. 9576.
Submitted Nov. 14, 1957. Decided Feb. 18, 1958.
Rehearing Denied March 31, 1958.
322 Pac. (2d) 1104.

Joseph J. McCaffery, Jr., Thomas F. Kiely, Thomas F. Joyce, Butte, for appellant. Thomas F. Joyce argued orally.

P. E. Geagan, William N. Geagan, Butte, for respondent. William N. Geagan argued orally.

MR. JUSTICE CASTLES:

This is an appeal by defendant from a judgment on a verdict for plaintiffs after defendant was nonsuited on her amended cross-complaint. Her motion for a new trial was denied. The action is founded in claim and delivery. The dispute is between rival claimants, designated "friends" of the insured and successively named beneficiaries in a group life insurance contract. Except for this designation, neither plaintiffs nor defendant

would have an insurable interest. The contest is solely for possession of the group certificate. Defendant claims her interest is vested.

The suit was instituted in Silver Bow County to determine the right to possess a $2,250 group life certificate, in usual form, issued originally in 1941 by the Prudential Insurance Company of America on the life of one Luis Kruzich, a miner employed by The Anaconda Company in Butte, Montana; $500 of the coverage is industrial insurance, $1,750 is term life insurance. We make no ruling as to whether the contract is severable. The plaintiffs are the beneficiaries last named. The defendant is the beneficiary they superseded. Neither the employer nor the insurer are parties to this action.

The verdict and judgment awarded possession to plaintiffs but denied damages to plaintiffs for wrongful detention by defendant. In effect, the jury decided that as between the rival beneficiaries, the plaintiffs had established a superior right to the death benefits.

In a cross-complaint, defendant alleged she was given the certificate by the insured, but alleged that through a conspiracy the plaintiffs and other unnamed had persuaded the insured to change the beneficiary to plaintiffs about a month before the insured died. Demurrer was sustained to her cross-complaint.

An amended cross-complaint continued the allegations of conspiracy but abandoned the allegation of gift and asserted instead an agreement between defendant and the insured that, if defendant paid the premiums falling due after the time of the agreement, she could have the certificate. The testimony indicated that the alleged agreement was made soon after the insured had been injured and when he believed he would never again be able to work. Defendant's amended cross-complaint therefore still alleges a gift, except made *causa mortis* and called an agreement. But having adopted the theory of an agreement, defendant may not depart from it. State ex rel. Altop v. City of Billings, 79 Mont. 25, 32, 255 Pac. 11, 54 A.L.R. 1091;

Gay v. Lavina State Bank, 61 Mont. 449, 456, 202 Pac. 753, 18 A.L.R. 1204, and citations.

We therefore need not examine the difference between completed gifts *inter vivos*, which are irrevocable, and gifts *causa mortis*, which generally, but depending on the circumstances, may be revoked. See 24 Am. Jur., Gifts, sec. 4, p. 732; 38 C.J.S., Gifts, sec. 4, p. 782; Nelson v. Wilson, 81 Mont. 560, 569-570, 264 Pac. 679.

In this connection, the case of Stepson v. Brand, 213 Miss. 826, 58 So. (2d) 18, 22, 33 A.L.R. (2d) 267, involving a group certificate written on the life of an employee of the Masonite Company, given by the insured to his wife but later claimed by a beneficiary with whom the insured had entered into what the Mississippi court called a "ceremonial marriage," supports the theory of vested interest urged by defendant here. The decision is annotated in 33 A.L.R. (2d), beginning at page 273. It is noted, however, that the effect of the decision is to sustain the position of the wife and widow as against an interloper. In closing its opinion, the Mississippi court remarks that it is "mindful of the fact that proof of the gift in cases of this character should be clear and convincing so as not to open the way to fraud arising out of the mere possession of a pretended gift at the time of the death of the alleged donor."

A comparable situation involving industrial group insurance was examined by the Alabama Supreme Court in Jennings v. Provident Life & Accident Ins. Co., 246 Ala. 689, 22 So. (2d) 319, and reconsidered on appeal in Jennings v. Jennings, 250 Ala. 130, 33 So. (2d) 251, with opposite result. But in the Alabama case a later donee wife, from whom the insured had been separated for a time, was awarded the death benefit over a beneficiary named by the insured in the interim. The effect of both decisions, however, is to support the claimant with the greater moral right. With that principle we fully agree.

In the present case it could be said that so long as the defendant kept the certificate in force some equities might arise

in her favor for the reason that her premium payments would be making death benefits available (at least up to $500 under the Industrial Facility of Payment clause) against the expense of the insured's last illness and burial. But this was not mentioned in testimony, nor was it urged by counsel; and the record shows that the insured's last days were eased and the insured's funeral expenses were paid, not by defendant but by the plaintiff's, who have still to be reimbursed.

As we have pointed out, defendant adopted the theory of an agreement and is bound by it. Gay v. Lavina State Bank, supra. 3 Words and Phrases, p. 15, defines the term "agreement" as "a completed contract," also as "a mutual obligation," and Restatement, Contracts, sec. 3, p. 5, defines an agreement as "a manifestation of mutual assent." Ballantine's dictionary adds that "The legal import of the word [agreement] includes not only a promise, but also the consideration for which the promise was made."

If the agreement was conditioned upon any consideration, it is neither alleged nor proven. The only obligation the agreement imposed on the defendant was paying the premiums to collect the death benefit. Her obligation therefore ran to herself. The essential of mutuality is lacking. 1 Williston, Contracts (Rev. ed.), sec. 141, p. 504.

Hereafter we will review defendant's testimony in some detail. The trial court considered it insufficient to support defendant's cross-complaint alleging agreement and conspiracy to change the beneficiary and the jury's verdict rejected it as a defense against plaintiff's claim for possession.

In considering this appeal we bear in mind the rule that "in reviewing the court's action in sustaining a motion for a nonsuit we must deem every fact true which the evidence tends to prove and interpret the evidence in the light most favorable to the plaintiff [here the cross-complainant] * * * Yet if the evidence is such that a recovery cannot be had on any reasonable view, it is proper for the court to take the case from the

jury." Burns v. Fisher, 132 Mont. 26, 313 Pac. (2d) 1044, 1046.

We also recognize that where "the evidence is conflicting, but substantial evidence appears in the record to support the judgment, the judgment will not be disturbed on appeal, and this is especially true when the court, as here, has passed upon the sufficiency of the evidence on a motion * * * for a new trial and upheld its sufficiency." Wallace v. Wallace, 85 Mont. 492, 502, 279 Pac. 374, 377, 66 A.L.R. 587. See also Reynolds v. Trbovich, Inc., 123 Mont. 224, 210 Pac. (2d) 634; Holden v. Varner, 128 Mont. 211, 272 Pac. (2d) 1008.

The group certificate here involved is the last of several successively issued to the insured through insured's employer, varying in amounts as insured's duties changed, but all issued at insured's own request and, until he was disabled, all paid for by the insured. The original application gives insured's date of birth as August 15, 1880, and names Mary Kruzich, wife, beneficiary. On November 28, 1943, the insured changed the beneficiary to the defendant, using the designation "Etta Lacey, friend," and according to her testimony immediately gave her the certificate. Defendant kept possession of it and of the certificates issued from time to time in lieu of it until she surrendered the last issued certificate to the court at the time of the trial. In each certificate her designation as beneficiary, "Etta Lacey, friend," is carried forward. The last certificate, here in dispute, is dated effective January 12, 1948.

Except the original designation of a wife as beneficiary and except that one witness mentioned having heard the insured once refer to a daughter "in the old country," nothing is shown as to insured's family status. No probate is mentioned. We assume the insured died without will or estate. Defendant testified she knew insured as a bachelor.

It is elementary that under R.C.M. 1947, sec. 40-1002, subd. 3, everyone has an insurable interest in his own life and may procure insurance on his own life and transfer it to another,

with or without insurable interest, so long as the transaction is *bona fide* and the right to change the beneficiary is reserved in the contract. The foregoing is, however, subject to the rights arising through vested interest.

It is generally held that "the mere payment or the assumption of payment of the premiums by a beneficiary without insurable interest is not of itself sufficient to establish the speculative character of the contract." 44 C.J.S., Insurance, sec. 202, pp. 899, 902, citing many cases, including Mutual Aid Union v. White, 166 Ark. 467, 267 S. W. 137, which holds that if the policy is valid at inception it is not invalidated by the beneficiary paying the premiums after the insured has ceased to pay them. In any event, the defense of lack of insurable interest is to be raised only by the insurer, 44 C.J.S., Insurance, sec. 212, p. 915, and may be lost by waiver or estoppel; payment into court by the insurer being a complete waiver of this defense. As the record stands here, the problem of insurable interest is not involved.

About March 17, 1949, the insured fell and was permanently injured. From the time of his injury the insured was unable to work. He died on September 7, 1953.

Defendant and her witnesses testified that while the insured was convalescing in the Silver Bow County Hospital in March of 1949, the insured told defendant that if she would pay the monthly premiums as they fell due she could have the group certificate. They also testified to conversations with the insured in which he warned that plaintiffs were conspiring to change the beneficiary.

No objection was made that this testimony came within the purview of the so-called dead man's statute, R.C.M. 1947, sec. 93-701-3, subd. 3. This objection was considered by the Alabama court in Jennings v. Provident Life & Accident Ins. Co., 246 Ala. 689, 22 So. (2d) 319, supra, and it was there held that conversations essentially identical with those to which defendant testified are barred. But on reconsideration in Jennings v.

Jennings, 250 Ala. 130, 33 So. (2d) 251, supra, the Alabama court concluded that the testimony was not within the prescription of the dead man's statute. We refer to our most recent discussion of this statute in Mowbray v. Mowbray, 131 Mont. 580, 312 Pac. (2d) 995, but express no opinion.

Defendant testified that in keeping with the alleged agreement, she, through her husband, then began paying premiums on the insured's certificate. The month is not given but apparently it was April 1949. The premium was $1.35 monthly. Many receipts for this amount are among the exhibits, but none give the name of the party actually making the payment. Defendant swore that a total of $64.80 was paid in her behalf. The husband admitted that they did not pay the last month's premium, and while he insisted that he paid the premiums for July and August 1953, this was disputed. Analysis shows that assuming defendant paid first monthly premium for April 1949 and last monthly premium for August 1953, she would have paid fifty-two monthly, $1.35 premiums. However, her total of $64.80 divided by the $1.35 monthly amount gives forty-eight months leaving not only the month of September 1953 but at least four other months during the period of her so-called agreement when, by her own testimony, she did not pay premiums and therefore did not keep the agreement she alleged.

From shortly after the first of the certificates was issued to the insured until a month before his death, the insured lived alone in a Butte rooming house. We find no testimony indicating an invitation by defendant or her husband that he come into their home. As stated, in March 1949 he was permanently disabled. On August 11 or 12, 1953, plaintiffs took insured into their home, caring for him there until he died there on September 7, 1953. They paid his bills for physicians' calls and drugs and they underwrote and immediately before the trial paid the expense of his funeral and interment. These two last items total $678. Under the Facility of Payment clause, the most they can be reimbursed out of the certificate is $500, as-

suming the death claim is not rejected and assuming the insurer will make this disbursement to them. As stated, the insurer is not a party to this suit. By comparison it is noted that defendant's advances under the alleged agreement total $64.80.

Power to change the beneficiary is reserved to the insured in the Group Certificate. On August 13, 1953, the insured changed the beneficiary from the defendant to plaintiffs, likewise describing them as ''friends.'' This change was made in plaintiff's home, but the insured's mental or physical ability to make the change is not questioned and the change was executed in the presence of a disinterested witness and before a representative of the employer's insurance division office and on the insurer's standard change of beneficiary form, which this representative had brought to the insured at his request made through the disinterested witness. Defendant, however, interprets all this as the culmination of a conspiracy against her.

The group policy, which rather than the individual group certificate controls the contract of insurance (2 Appleman, Insurance Law and Practice, sec. 988, p. 405), is not among the exhibits. It was introduced at the trial, but was withdrawn, and no excerpts were read into the record from it. We are therefore uninformed as to any requirements it may contain additional to those in the group certificate but we are confident the trial court was familiar with its provisions.

As stated, power to change the beneficiary was reserved to the insured and the change appears to be *bona fide* and regular in form. As will appear, defendant's testimony offered to establish conspiracy is little more than self-serving accusation. The trial judge remarked that he was admitting it solely because a conspiracy had been alleged. We are likewise unimpressed with defendant's testimony offered to establish the so-called agreement. That all this testimony was convincing neither to the court nor to the jury is manifest from the court's order nonsuiting defendant on her cross-complaint and from the

jury's verdict awarding the certificate to the plaintiffs. The foregoing will suffice as analysis of the facts.

The appeal is presented solely as a contest between rival ■ beneficiaries seeking possession of what the defendant described as "a policy for a beneficiary." Uneventful recovery by plaintiffs or by defendant is apparently taken for granted once right of possession is determined by this appeal. Although for all practical purposes no parties could be more necessary to a complete determination of the question ultimately involved, namely, who collects? Neither the employer nor the insurer are parties. They did not interplead, neither has intervened, neither was joined as a party by plaintiffs nor by defendant, neither was ordered brought in by the trial court. See R.C.M. 1947, secs. 93-2825, 93-2826, 93-2812 and 93-2828. But on appeal, we confine ourselves to the case presented on appeal. Murphy v. Cooper, 41 Mont. 72, 108 Pac. 576; Pue v. Wheeler, 78 Mont. 516, 255 Pac. 1043, certiorari denied Wheeler v. Pue, 275 U. S. 483, 48 S. Ct. 19, 72 L. Ed. 385.

In addition, therefore, to the presumptions we must always ■ indulge in favor of the regularity of trial proceedings. Gilna v. Barker, 78 Mont. 357, 254 Pac. 174; Koger v. Halverson, 125 Mont. 560, 242 Pac. (2d) 273. We must, like the litigants, take for granted not only that the deceased was in fact insured at the date of his death (see discussion of duration of risk in Group Insurance, 44 C.J.S., Insurance, sec. 329, a. and b., pp. 1261-1263; Emerick v. Connecticut General Life Ins. Co., 120 Conn. 60, 179 A. 335, 105 A.L.R. 413), but also that the insurer will promptly pay over the death benefit to whoever is successful here. These assumptions may or may not be warranted. We make no ruling on them. On appeal, we decide the appeal.

Appellant makes four specifications of error, the first going to peremptory challenges, the other three being directed to the trial court's refusal to allow defendant to go to the jury on her allegations of agreement and conspiracy. As to the first specifi-

cation, defendant is precluded by stipulation of her own counsel. As to the remaining three, they stand on the alleged agreement, but without it they must fall.

Appellant complains that the trial court permitted peremptory challenges to respondent after the jury had been selected and both parties had waived. This specification completely ignores appellant's own stipulation after the jury was impaneled and before any testimony was introduced. We find this in the trial record:

"The court:—Are both parties ready to proceed with the trial of this case and *will the parties stipulate that the jury is duly constituted?*" Emphasis added.

(Plaintiffs' counsel)—"The Plaintiffs are ready, your Honor, and agree that the jury is duly constituted."

(Defendant's counsel)—"We are ready. So stipulated. (Whereupon [plaintiffs' counsel] made plaintiffs' opening statement.)"

Defendant relies for authority on our opinion in State v. Peel, 23 Mont. 358, 59 Pac. 169, 171. This was not a civil matter but a conviction for murder in the first degree. Error was there assigned upon the court's permitting the State to make a peremptory challenge of a juror after the panel had been passed for cause. The defendant objected but was overruled. The conviction was reversed, but on other grounds. In State v. Peel it was said:

"He [either party] may use it [a challenge] as he pleases at any time before the jury is finally accepted and sworn. We think the court was clearly right in overruling the objection, both upon principle and authority."

In Ledger v. McKenzie, 107 Mont. 335, 340, 341, 85 Pac. (2d) 352, 353, this court stated: "The general rule is that, by failing to challenge or object, a party waives any irregularity in the impaneling of a jury. * * *

"By their failure to make timely objection plaintiffs waived any right to urge these irregularities."

The record in the present appeal shows that defendant's own counsel stipulated to the array. The first specification merits no further discussion.

By her own choice, defendant founded her case on an alleged agreement. She convinced neither the judge nor the jury. Barring error of law, the nonsuit must stand. In reviewing the testimony "an appellate court must assume that the facts are as stated by the witness, believed by the jury and claimed by the prevailing party." (Commentator's headnote to Wallace v. Wallace, 85 Mont. 492, 279 Pac. 374, 66 A.L.R. 587, supra.) We will let the testimony speak for itself. The rule of exclusion (R.C.M. 1947, sec. 93-1901-2) was not invoked by either side.

Defendant's testimony as to the original gift was as follows:

"Yes, Mr. Kruzich had me write my name and address on a piece of paper; and I asked him what he wanted with it, and he said: 'Never mind, it is none of your business,' or something like that; and then the next thing I knew he had called me on the phone and told me to come to his apartment or room—my husband and I—and he presented me with this policy. * * * I asked him what he did it for and he said it was because we were friends."

Defendant's testimony as to the agreement was:

"Q. Did you have an agreement with Luis Kruzich regarding the payment of these premiums? * * * A. Well, the proceeds of the policy were to be mine, and I was to pay the premiums. * * *

"Q. Did the agreement that was entered in with Mr. Kruzich have anything to do with his physical condition? * * * A. Well, because he was afraid he would never work again—with his broken hip.

"Q. Did he have any other income that you know of? A. No. * * *

"Q. And in 1949, when you entered this agreement when he was in the hospital, who had possession of the policy of insurance? A. I did."

Charles Lacey, the son of defendant, testified as follows: "A. His [Kruzich's] statement was that the Feelys [plaintiffs] were out to visit him, and he says to me and to Tommy [son's friend] : 'That they are after me to change the policy.' And he says to me, he says: 'Tell Etta'—that's my mother and he used to call her by that name, Etta—he says: 'Tell her to keep the policy'."

The friend's testimony was:

"The statement was—we was out there talking—and Charles Lacey [son of defendant] asked Mr. Kruzich if anybody had been out to see him; and he says: 'Yes,' he says, 'the Feelys were out.' And he says: 'They were asking me to change the policy.' And he says: 'No, absolutely not,' he says, 'tell Etta to retain the policy'."

Mr. Lacey's testimony as to the agreement and with regard to the premium payments was:

"Well, Mr. Kruzich told my wife and me that it was agreed that if she would take the policy and keep the premiums up, that the policy would be entirely hers, that he figured that he would not be able to work any more. * * *

"Q. Did you make all the payments that were made on the premiums of Luis Kruzich after '49 ? * * * A. Yes.

"Q. You made them all ? A. Except when I'd meet him and he'd want to take a little walk up by, I give him the money and he went up and paid them, except one.

"Q. Which one was that ? A. Well, I went up there the last part of August [1953] to pay for his September premium and it was already paid for."

It was on this testimony that the court sustained plaintiffs' motion for nonsuit. What we quote is essentially all the testimony as to the alleged agreement and typical of all the testimony, of which there was little more, as to the alleged conspiracy. The jury would not believe it. If there was a conspiracy, at least it produced two "friends" who provided the insured with human care and companionship to lighten his

dying days and gave him a decent burial in accordance with his faith. Defendant and her husband both testified they did not attend the funeral and the husband added that he did not even know where the insured, their "friend," is buried.

Defendant's assertion of vested interest necessarily assumes the existence of the agreement she alleged. If there is no agreement, there is no vested interest. The existence of this agreement must be tested against the rule that "where a right to change the beneficiary has been reserved * * * the beneficiary named in the policy has a mere expectancy * * * unless he has acquired a vested interest by the making of a completed gift, or by virtue of a contract with insured * * *." 46 C.J.S., Insurance, sec. 1173(2), pp. 60, 62. This being equally for old line, fraternal or group insurance. 2 Appleman, op. cit. supra, sec. 903, p. 305, sec. 921, p. 330. We discern no vested interest.

Defendant abandoned her theory of gift. She failed to prove her theory of agreement. Her assertion of a vested interest stands unsupported. She established no right to possession of the group certificate.

The alternative prayer of defendant's amended answer asks return of her premium ante. "The usual rule is that a person not the beneficiary of the contract, and, therefore, a stranger to it acquires no vested rights by the payment of premiums or assessments, in the absence of a contract with the insured as to this matter, as he is considered to be a mere volunteer. * * * When such payments are made in contracts of ordinary life insurance where the power to change is reserved, or or contracts of fraternal insurance, it has been held that the beneficiary acquires no vested rights and cannot prevent the insured from changing the designation of beneficiary. It has even been held that such payments are in the nature of gifts made to the insured by the beneficiary." 2 Appleman, op. cit., supra, sec. 923, pp. 340-342. However, "Under industrial policies, it has been held that a person paying all the premiums

usually acquires a lien to the amount thereof." 2 Appleman, op. cit., supra,. sec. 924, pp. 346, 349.

Defendant did not pay all premiums in fact she did not even pay all those she said she agreed to pay; but we will not penalize her as a volunteer. Upon payment to her in the amount of $64.80, the judgment will stand affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ANGSTMAN and ADAIR, concur.

THE HONORABLE LE ROY L. McKINNON, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, dissenting:

In this action the respondents, plaintiffs below, filed a complaint in claim and delivery for that certain certificate issued by the Prudential Insurance Company of America, on a policy of group insurance on the life of one Luis Kruzich. The complaint alleges: That the plaintiffs are now and at all times pertinent to this action, were, entitled to possession of the said certificate; that the beneficiary named in said certificate was the defendant; that the beneficiary of the proceeds of the said policy of insurance was changed shortly before the death of the insured, from the defendant to the plaintiffs; the prayer is for possession of the certificate or damages in the amount of the face value of the policy of insurance. The defendant filed general and special demurrers which. were overruled. Plaintiff's demurrers to the answer and cross-complaint were sustained, and an amended answer and cross-complaint were filed. The answer consisted of a general denial; the cross-complaint alleged an absolute assignment of the beneficial interest in the policy to the defendant by the insured during his life, and a conspiracy on the part of the plaintiffs to cause a change of beneficiary of the said policy. The matter was tried to a jury, and when all testimony was in the plaintiffs moved for a non-suit of defendant upon the amended cross-complaint. ,

The following statement by the court appears at page 255 of the transcript on appeal:

"The Court: It is the Court's view is that it is willing to go along with you—that there is proof of a verbal contract to pay these things; but the Court still feels that that's nothing for the jury to decide; that the jury isn't there to decide whether they are going to be paid off according to the written contract or according to the verbal contract. It's just not a jury question in accordance with the prayer, there is a prayer that a lien be impressed—this jury can't impress any liens. If the Court was confronted with a situation where counsel on both sides were moving for a directed verdict, the Court would dismiss the jury and then feel that it had within its power such a thing as the impression of a lien, but to turn this over to a jury to decide which contract shall prevail here is unthinkable to the court." After arguments, the motion for nonsuit of the cross-complaint was granted.

In an article on replevin and its modern statutory substitute, claim and delivery, in 46 Am. Jur., Replevin, sec. 4, p. 8, it is stated:

"It cannot be brought for the purpose of trying the right of property."

In the same article, 46 Am. Jur., Replevin, sec. 22, p. 15, is the following:

"Replevin, or equitable replevin, may be maintained for a certificate of stock, where the object is to regain possession of the specific paper, and not to test the right to the property which it represents."

The insurance certificate involved in this action is analogous in many respects to a stock certificate. There is no serious attempt in this case to allege or prove a right to possession of the specific paper which is the certificate. It is in evidence that various certificates have issued from time to time, but no explanation is offered as to why a new certificate was not issued, if in fact a change of beneficiary was effected. The whole intent

300

of the pleadings and proofs is to establish a property right in the proceeds of the policy of insurance. I believe the plaintiffs have misconstrued their cause of action. In a proper action the necessary parties would be before the court and amenable to any judgment rendered; whether or not any sum is due and payable on the policy could be determined, as well as the proper beneficiary entitled to receive such sum, and a final determination of the entire matter would result. In my opinion, the complaint fails to state a cause of action and the general demurrer of the defendant should have been sustained.

Further, assuming the matter could be tried on the present pleadings, it is my opinion that prejudicial error was committed by the trial court in sustaining the motion for nonsuit of the amended cross-complaint. There were proofs offered which, if believed by the jury, would sustain a finding of a good and sufficient assignment of the proceeds of the policy. Comments of the court, quoted above, indicate that the court believes there was sufficient proof submitted, but the question was taken from the jury, and they were asked to find a general verdict without considering whether or not an assignment had been made. For the reasons stated, it is my opinion the case should be reversed and remanded with directions to sustain the defendant's demurrer to the complaint, and dismiss the complaint.