No. 84-126

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

ILA MORIN, individually and heir
of RALPH MORIN, deceased, et al.,

Plaintiff and Appellant,

-vs-

R. WESLEY MAPSTON and CAROL SUE
MAPSTON, husband & wife,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Tipp, Hoven, Skjelset & Frizell; Richard Buley,
Missoula, Montana

For Respondent:

Victor F. Valgenti, Missoula, Montana

---

Submitted on briefs: June 19, 1985

Decided: August 29, 1985

Filed: AUG 29 1985

*Ethel M. Harrison*

---
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Ila Morin appeals from a judgment of the District Court, Fourth Judicial District, Lake County, determining that she has no valid interest in or claim to certain real property in Lake County. We affirm the District Court.

The cause was tried with a district judge sitting without a jury. We set out here the pertinent items of the findings of the District Court.

Plaintiff, Ila Morin, is the widow of Ralph Morin, who died on June 25, 1978. In this cause she is acting individually, as the sole heir of Ralph Morin, and as the personal representative of his estate. Defendant Carol Sue Mapston is a daughter of Ralph and Ila Morin, and the wife of the other defendant, R. Wesley Mapston.

Before he married Ila, Ralph Morin acquired a tract of land in Lake County, Montana, which is the subject of this litigation. For the purpose of the record, the tract is more particularly described as:

> The East Half of the Northwest Quarter (E1/2 NW 1/4) and the West Half of the Northeast Quarter (W1/2 NE1/4) of section 20, Township 17 North, Range 20 West, Montana Meridian, Lake County, Montana.

The title to the land remained in Ralph's name. After his marriage, it was used by him in his ranching operation in conjunction with other land in Lake and Sanders Counties.

In December 1962, Ralph and Ila entered into a financing transaction with the Federal Land Bank of Spokane in order to assist the Mapstons to purchase land. The Morins issued a promissory note to the Federal Land Bank evidencing an $11,000 loan and delivered a real property mortgage securing

the same which included the subject lands. The $11,000 loan was used by the Mapstons to make the downpayment on the purchase of the home in which they now reside in Missoula County. All payments on the note and mortgage were made by the Mapstons.

On April 25, 1969, Ralph and Ila Morin executed and delivered a quitclaim deed, unconditional on its face, conveying the 160 acres to R. Wesley Mapston and Carol Sue Mapston. The deed was duly recorded in the office of the Lake County Clerk and Recorder. At that time, the purpose was to enable the defendants to secure additional financing from the Federal Land Bank of Spokane. There have been other mortgages subsequently, and at the time of trial the land was still subject to a Federal Land Bank mortgage.

Sometime later, after the conveyance of the 160 acre tract referred to, R. Wesley and Carol Sue Mapston signed a typewritten, undated note which verbatim follows:

The land described below belongs to Ralph Morin

E 1/2 NW 1/4 of 20-17-20

W 1/2 NE 1/4 of 20-17-20

This land was temporarily deeded to Carol and Wes Mapston to enable them to buy land. As soon as possible this land is to be returned to Ralph Morin, after they have acquired enough security to compensate.

The typewritten note was apparently prepared on a typewriter owned by Leslie I. Morin, the youngest of the Morin children, who is now deceased. It was signed by the Mapstons during a disagreement Carol Sue had with her father in 1971.

After the conveyance of April 25, 1969, and until 1971, Ralph Morin continued to use the land in his ranching operation under an agreement with the Mapstons that he would

- 3 -

pay the real property taxes. In 1971, Bob Morin came to manage the family ranch. Thereafter, Bob Morin used the land for ranch purposes and paid the real property taxes under the same arrangement with the Mapstons until he left the ranch in the fall of 1978, after Ralph Morin's death. After Bob Morin left the ranch to the time of the lawsuit, the Mapstons used the 160 acres and paid the taxes.

On August 9, 1978, Ila Morin was appointed personal representative of the Estate of Ralph Morin and a decree of final discharge was entered on August 15, 1979. The real property which is the subject of this litigation was not included or mentioned in the estate proceedings.

The District Court found that on April 25, 1969, at the time of the conveyance, and on numerous occasions thereafter, Ralph Morin stated that the conveyance was intended to be a gift to his daughter, Carol Sue, as her inheritance. The District Court also found that after the death of Ralph Morin, Ila Morin made statements to two witnesses that the 160 acres had been given by Ralph to Carol Sue.

The District Court concluded that the deed, which was unconditional on its face, delivered full legal title to the Mapstons without restriction or conditional limitation; that the testimony of other Morin children and unrelated witnesses concerning statements made by Ralph Morin during his lifetime and by Ila Morin thereafter supported the conclusion that a completed gift or grant of the land to Carol Sue Mapston as her inheritance had been accomplished at the time of the execution and delivery of the deed. The District Court therefore entered judgment in favor of the Mapstons.

The plaintiff Ila Morin raises four issues:

1.    That the court should specifically enforce the typewritten note signed by Ralph and Ila Morin as a contract to convey the real property to Ralph Morin;

2.    That the oral testimony regarding gifts to the Mapstons should be barred by the Statute of Frauds as in conflict with the written contract of the parties;

3.    That the property held by the Mapstons is in trust since they promised to reconvey the property back to Ralph Morin.

4.    That the findings and conclusions of the District Court are not based upon substantial credible evidence in the record.

The central dispute of fact in this case swirls around whether the typewritten, undated note which we have set out previously was executed by Wesley and Carol Sue Mapston at the same time as Ralph and Ila Morin executed the quitclaim deed of the 160 acres to the Mapstons.

Testimony was presented by Ila Morin and by Elsie Meyer, who was a secretary at the Federal Land Bank office in Missoula in 1969, that the quitclaim and the undated, typewritten note were executed at one and the same time in the office of the Federal Land Bank in Missoula. Elsie Meyer testified that she was the person who typed both instruments; and that she had been reprimanded by her supervisor for typing documents which properly should have been prepared by the attorneys for the parties. Ila Morin testified that although the signature of Victor Valgenti as notary on the quitclaim deed was not placed thereon in the Federal Land Bank office, she contended that the Mapstons had taken the quitclaim deed with them and brought it back notarized as it

now appears and was recorded, without the grantors being present.

The Mapstons produced testimony that the quitclaim deed was signed by Ralph and Ila Morin in the office of Victor G. Valgenti, where he notarized it. They contended that the typewritten instrument was signed by them at another time. A copy of the quitclaim deed was produced from Victor Valgenti's office; an examination of the documents showed that the quitclaim deed and the typewritten note were not prepared on the same typewriter.

The District Court found that the quitclaim deed was executed and delivered by the Morins to the Mapstons; that the typewritten note was signed by the Mapstons "sometime later" and that it was signed by the Mapstons during a disagreement Carol Sue had with her father in 1971.

Particularly where credibility of witnesses is involved, we give great weight to fact-findings of a district court. We are especially enjoined by Rule 52(a), M.R.Civ.P. that findings of fact may not be set aside by us unless clearly erroneous. The central finding of fact here is clearly supported in the evidence.

The important legal effect of the court's finding that the quitclaim deed was executed earlier than the subsequent typewritten note is that in law the quitclaim deed constituted a voluntary transfer by the Morins to the Mapstons, an executed contract subject to all rules of law concerning contracts in general, except that consideration was not necessary to its validity. Section 70-1-502, MCA. In other words, the Morins had made a gift of the 160 acres to the Mapstons. All the elements and legal results of a gift thereby came into play. There was delivery,

accompanying intent, and acceptance by the donees. State Board of Equalization v. Cole (1948), 122 Mont. 9, 14, 195 P.2d 989, 992. The donors had gone as far as the nature of the property and the circumstances reasonably permitted in parting with the dominion and making the gift irrevocable. In Re Brown's Estate (1949), 122 Mont. 451, 458, 206 P.2d 816, 820. Inter vivos gifts are irrevocable. Feely v. Lacey (1958), 133 Mont. 283, 287, 322 P.2d 1104, 1106. The transfer vested in the transferees all of the actual title to the real property transfered which the transferors then had since no different intention was expressed or necessarily implied. Section 70-1-519, MCA.

Once it is recognized that the Mapstons became the owners of the 160 acres by gift, the remainder of the legal issues fall into place. The typewritten note signed by Wesley and Carol Sue Mapston cannot be specifically enforced because they have not received an adequate consideration for the contract, § 27-1-415(1), MCA, and because the contract lacks mutuality, § 27-1-414, MCA.

Moreover, no trust was created when the Morins executed and delivered the deed to the Mapstons. A voluntary trust can only be created by words or acts of the trustors which indicate with reasonable certainty an intention on the part of the trustor to create a trust. Section 72-20-107, MCA. An involuntary trust, to be created by operation of law, § 72-20-103, MCA, requires fraud, mistake, undue influence, violation of a trust or other wrongful acts. Eckart v. Hubbard (1979), 184 Mont. 320, 326, 602 P.2d 988, 991.

The District Court did not commit error in admitting testimony to the effect that Ralph Morin had made statements in the presence of others, including his wife Ila, that he

- 7 -

intended the transfer of the 160 acres to be an inheritance to his daughter. That evidence simply buttressed what already is the legal effect of the transfer by deed, a completed gift.

We do not find any substance in the fourth issue, that the findings and conclusions of the district judge are not based on substantial, credible evidence. We have already set forth the substantial and credible evidence that supports the findings and conclusions of the District Court.

Accordingly, the judgment of the District Court is affirmed.

_John C. Sheehy_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_L. C. Gulbrandson_

Justices